In re FLO–LIZER, INC., Debtor.

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**FLO–LIZER, INC.,**
**Defendant–Appellant.**

No. 89–4093.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 7, 1990.

Decided Oct. 18, 1990.

Albert Ritcher, Office of the U.S. Atty., Columbus, Ohio, Gary R. Allen, Acting Chief, Joanne C. Rutkowski, Gary D. Gray, and Linda E. Mosakowski (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for plaintiff-appellee.

E. James Hopple and Jeffrey A. Ayres (argued), Schottenstein, Zox & Dunn, Columbus, Ohio, for defendant-appellant.

Before JONES and NORRIS, Circuit Judges, and TODD, District Judge.[*]

TODD, District Judge.

Flo-Lizer, Inc., appeals from the district court's decision that postpetition interest on federal employment taxes should be afforded first priority status as an administrative expense of a Chapter 11 bankruptcy estate. For the reasons set forth below, we affirm the judgment of the district court.

## I.

The facts of this case are not in dispute. Debtor-appellant Flo-Lizer, Inc. ("Flo-Lizer"), filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Flo-Lizer continued to operate its business and incurred post-petition social security, unemployment, and federal income taxes which were not paid. The Internal Revenue Service filed an administrative expense claim for postpetition taxes and the interest and penalties that had accrued on the taxes. Flo-Lizer objected to the interest part of the claim.

The bankruptcy court sustained Flo-Lizer's objection and held that the IRS was not entitled to administrative expense priority on its claim for interest on the postpetition tax liability. The United States appealed the decision of the bankruptcy court

to the United States District Court for the Southern District of Ohio. The district court reversed the decision of the bankruptcy court, holding that interest on postpetition taxes and penalties was entitled to "first priority administrative expenses status pursuant to 11 U.S.C. § 503, 507." *In re Flo-Lizer, Inc.,* 107 B.R. 143, 146 (S.D. Ohio 1989). The district court found the wording of section 503(b) to be ambiguous and looked to the legislative history of the statute. Because the legislative history was unclear, the court ruled that it must construe the statute so as not to change prior law which had given postpetition interest on taxes and penalties administrative expense status. Flo-Lizer appeals the decision of the district court.

## II.

The only issue before this court is whether the interest that accrues on postpetition taxes and penalties is entitled to first priority as an administrative expense pursuant to 11 U.S.C. § 503(b). Flo-Lizer argues that the IRS is not entitled to such interest because (1) section 503(b) does not explicitly include interest as an administrative expense, (2) legislative history indicates that Congress did not intend for interest to be included as an administrative expense, and (3) granting administrative priority status to interest on postpetition taxes would create inequity among administrative creditors. The United States contends that section 503(b) is ambiguous and its legislative history is insufficient to ascertain Congress' intent conclusively; therefore, interest on postpetition taxes should be treated as an administrative expense because such an interpretation is consistent with pre-Bankruptcy Code law and with other sections of the Code.

The three circuits that have already addressed this issue have held that postpetition interest should be given section 503(b) priority status. *See In re Mark Anthony Construction Co.,* 886 F.2d 1101 (9th Cir. 1989) (*"Mark Anthony"*); *In re Allied*

---

[*] The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

*Mechanical, Inc.,* 885 F.2d 837 (11th Cir. 1989); *United States v. Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984). The district court's decision was consistent with the Ninth Circuit's reasoning in *Mark Anthony,* and this court also finds the Ninth Circuit's reasoning persuasive.

Flo–Lizer and the United States agree that employment taxes and penalties incurred postpetition are entitled to first priority under section 503(b) and that the characterization of interest on these taxes and penalties as an administrative expense would give it first priority as well. The parties also agree that under pre-Bankruptcy Code law, *see Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), postpetition interest would be treated as an administrative expense and would receive first priority status.

The *Mark Anthony* court examined the statute and determined that section 503(b) does not expressly include or exclude interest. 886 F.2d at 1106. The statute provides:

Sec. 503 *Allowance of Administrative Expenses.*

.  .  .  .  .

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title, including —

(1) . . .

(B) any tax . . . ; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; . . .

11 U.S.C. § 503(b) (1988). Based on general usage and the Bankruptcy Code's specific provision that "including" is not a limiting term when used in the Code, *see* 11 U.S.C. § 102(3) (1988), the Ninth Circuit determined that the word "including" was not restrictive. We agree that the failure

of Congress to expressly list interest as an administrative expense does not mean that it cannot be an administrative expense. Instead, the statute is ambiguous, and we must look to legislative history to determine its meaning.[1]

The Senate Judiciary Committee's bill included interest as an administrative expense. S. 2266, 95th Cong., 2d Sess. (1978). The House version of the bill did not. H.R. 8200, 95th Cong., 1st Sess. (1977). The compromise bill and the joint explanatory statement published in the Congressional Record made no mention of interest. *See* 124 Cong.Rec. H11,047–115 (daily ed. Sept. 28, 1978) and 124 Cong.Rec. S17,403–34 (daily ed. Oct. 6, 1978).

A rejected proposition "strongly militates against a judgment that Congress intended a result that it expressly declined to enact." *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974). However, section 503(b)'s legislative history shows Congress' inclination to include postpetition interest rather than a desire to exclude it. The Senate enacted a version that expressly included it, and the House cited a case in support of its bill which authorized postpetition interest. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 193 n. 123, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6153–54 (citing *Security First National Bank v. United States,* 153 F.2d 563 (9th Cir.1946)) ("1978 U.S.Code Cong. & Admin.News"). Also, the House report differentiated the government's position from that of other creditors:

In business cases, however, it is a frequent occurrence that the business will stop paying its taxes before it stops paying its other creditors, because the officers of the business know that detection of non-payment is more difficult for the taxing authority than it is for a supplier

---

1. Flo–Lizer argues that, because section 503 is written in clear language, there is no need for the court to construe the statute's legislative history. *See United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the language of the statute is clear, then a court must give effect to the statute as written. *Id.,* 489 U.S. at 240, 109 S.Ct. at 1030,

103 L.Ed.2d at 298. However, when statutory language is ambiguous, as here, the court must review the legislative history to determine the meaning of the statute. *See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

or lender, and that an unpaid supplier quickly stops shipping goods, though an unpaid taxing authority is usually unable to take collection action for months.

1978 U.S.Code Cong. & Admin.News at 6153–54. Additionally, other sections of the Bankruptcy Code indicate that Congress was not averse to postpetition interest. *E.g.*, 11 U.S.C. §§ 506(b) (providing postpetition interest to oversecured creditors) and 726 (providing postpetition interest to unsecured claims when the bankruptcy estate ultimately proves to be solvent). Thus, legislative history coupled with the House Committee's silence regarding an intent to change pre-Bankruptcy Code law negate the inference that the deletion of interest from the final bill shows Congress' intent to change prior law.

As stated by the *Mark Anthony* court,

All of this is to say that Congress nowhere expressed an intention to abrogate the rule established in *Nicholas.* (Indeed, it never expressed an awareness of having done so.) We believe that this fact brings an important principle of statutory construction to bear directly on the issue we address here, namely that no changes in law or policy are to be presumed from changes in language in [a statute's] revision unless an intent to make such changes is clearly expressed. This rule—one which bars a court from construing a statute to have abrogated the common law, or to have established a new rule of law, without clear evidence in favor of such a construction—is firmly and sensibly entrenched in federal jurisprudence.

886 F.2d at 1107 (citations and footnotes omitted). We agree that there is nothing in the legislative history of section 503(b) demonstrating an intent by Congress to abrogate *Nicholas.*

Also supporting the government's position is the general treatment of interest as part of the underlying debt. The Supreme Court has determined that "interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt. Interest on a tax debt would seem to fit that description." *Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964). Congress adopted this position in the Internal Revenue Code. *See* 26 U.S.C. § 6601(e) (1988) ("Any reference in this title ... to any tax imposed by this title shall be deemed also to refer to interest imposed ... on such tax.") "Departing from the general rule and differentiating between taxes and interest only in [the] limited context [of interest on postpetition taxes] makes little sense ...; nor [is there] any compelling reason why Congress would have done so." *Mark Anthony,* 886 F.2d at 1108 (footnote omitted).

The inclusion of penalties on postpetition taxes in section 503(b) indicates that Congress was willing to have the bankruptcy estate pay for expenses that arise out of the failure of the debtor in possession or the trustee to pay taxes in a timely manner. There is no reason why Congress would give a lesser priority to interest than to penalties.

Finally, Flo–Lizer's argument that treating interest on post-petition taxes as an administrative expense would give the government an unfair advantage over other administrative claimants fails because the government is not in the same position as other claimants. The IRS is given preferred treatment under the Bankruptcy Code because it cannot choose its debtors or take advance security on tax debts. *See* 1978 U.S.Code Cong. & Admin.News at 6150–52. "[W]hile the bankruptcy laws can delay payment of taxes rightly owed, the operation of those laws should not work to force a taxing authority to make an interest-free loan to a party temporarily excused from paying taxes." *Mark Anthony,* 886 F.2d at 1108 n. 10 (citing *In re Boston and Maine Corp.,* 719 F.2d 493, 503–04 (1st Cir.1983).

## III.

For the reasons discussed above, we find that the district court was correct in determining that interest on postpetition taxes should be given first priority status as an administrative expense under 11 U.S.C.

§ 503(b). Accordingly, the decision of the district court is AFFIRMED.