BOGGS, Circuit Judge.
 

 Plaintiff trustee appeals the judgment of the district court affirming the bankruptcy court’s ruling that the debtor did not possess a property interest in the Headley Trust set up by his grandfather. The trustee argues that various agreements between the debtor and his mother did create an interest in the Headley Trust for his benefit. The trustee further contends that these various agreements are enforceable. For the reasons stated, we reverse.
 

 I
 

 During the 1930s, Hal Price Headley, Sr. (“Mr. Headley”) created
 
 inter vivos
 
 and testamentary trusts containing a corpus of approximately 886 acres of Fayette County property and other smaller assets. The trusts held the assets for the benefit of Mr. Headley’s wife (“Mrs. Headley”) for her lifetime. At her death, an equal share was to be held for the use and benefit of each of their three children (appellee Mrs. Patricia Headley Green and her siblings), with the remainder to their issue as they may appoint by their respective wills. After the death of Mr. Headley in 1959, Mrs. Green,
 
 *147
 
 her siblings, and Mrs. Headley entered into a written agreement (“1959 Agreement”), providing that the trust corpus would be divided into three substantially equal tracts upon Mrs. Headley’s death, one for the benefit of each of the three siblings. Under the terms of the 1959 Agreement, Mrs. Green would receive Tract B containing 315.566 acres.
 

 At some time prior to 1979, the once-happy Headley clan began to splinter. Mrs. Green and her siblings started to argue about whether the 1959 Agreement was equitable. To prevent abrogation of the 1959 Agreement, Mrs. Headley played hardball. She executed a codicil to her will that would impose a substantial monetary penalty against any party who initiated any action making the 1959 Agreement incapable of performance.
 
 [1]
 
 - Despite the penalty codicil, the Headleys continued to fight. In 1983, Mrs. Green and her children, one of whom is the debtor in the underlying bankruptcy, sent a letter to Mrs. Green’s siblings stating that they would not abide by the 1959 Agreement. One of Mrs. Green’s siblings then filed a declaratory judgment action in state court. The suit sought partition of the property in accordance with the 1959 Agreement.
 

 After two years of litigation, the parties settled the dispute. The settlement was embodied in a memorandum agreement between all of the parties to the action, including the three siblings and Mrs. Green’s children. The agreement was incorporated into Findings of Facts and Conclusions of Law, and a judgment was entered in state court on June 25, 1985. Mrs. Green and her five children also entered into an agreement (the “Green Agreement”). All of these various agreements together will be referred to as the “Fayette Agreements.”
 

 The Fayette Agreements partitioned the property into three parts for the benefit of the three siblings. Mrs. Green was further required to “exercise by her will the powers of appointment conferred upon her by the aforesaid trust ... in favor of her five children equally with the right to amend her will upon the death of any of her children without issue.” The Green Agreement, entered into between Mrs. Green and her five children, provided that the exercise of Mrs. Green’s powers, described above, “shall be irrevocable on her part and she shall not, by way of amendment or codicil or will, deed of conveyance or other instrument ... attempt to revoke or otherwise change the execution of such powers of appointment.” In exchange for Mrs. Green’s irrevocable pledge to convey the property to her children in equal shares, Mrs. Green’s children agreed not to challenge any of the conditions of the Headley Trust, thereby preventing the invocation of Mrs. Headley’s penalty provision.
 

 Regrettably, in 1983, debtor Jonathan Green, one of Mrs. Green’s children, entered into the thoroughbred business, and incurred substantial debts. By 1986 he was insolvent. On January 21, 1986, Mrs. Green made a new will revoking the prior will and its codicils. One-fifth of Tract B no longer would pass to her son, the debt- or, Jonathan Green. Rather, Jonathan Green became the trustee for his own children. Jonathan Green voluntarily agreed to this change. Mrs. Green and her son concede that the intent was to shield the assets from the son’s possible creditors.
 

 However, Mrs. Green’s plan to shield the family’s assets encountered difficulties. The January 21,1986 modification occurred within one year of the filing of the debtor’s bankruptcy petition (September 4, 1986). The transfer admittedly occurred while the debtor was insolvent and without valuable consideration given to the estate. These facts presented a classic fraudulent conveyance under 11 U.S.C. § 548 and under Ky. Rev.Stat.Ann. § 378.010
 
 et seq.,
 
 as made applicable by 11 U.S.C. § 544(b). The trustee of the bankruptcy estate therefore brought an action to set aside the 1986 modification. In response, Mrs. Green argued that the Fayette Agreements, to which she voluntarily agreed, violated Mr. Headley’s original intent when he established the Trust, and were therefore void. Based upon this defense, the bankruptcy court granted summary judgment for Mrs.
 
 *148
 
 Green, holding that the Fayette Agreements were invalid, and therefore Mrs. Green could circumvent the fraudulent conveyance laws. The district court then affirmed, ruling that the Fayette Agreements failed to create an interest in property for the debtor. Because bankruptcy law requires a finding that the debtor possessed an interest in the property in order to convey that interest fraudulently, the district court held that summary judgment was proper.
 

 Appellant Debra Doss, the trustee of Mr. Green’s estate, then brought this timely appeal. For the reasons stated, we reverse, finding that the Fayette Agreements are valid, do not violate the Headley Trust, and create a valid property interest for the benefit of the debtor.
 

 II
 

 Mrs. Green, under Mr. Headley’s original Trust, was the donee of a special testamentary power of appointment. The power was special, rather than general, because she could only bequeath her interest to a limited number of people, specifically her surviving issue. The power was testamentary because she could only dispose of the property by will. As the donee of this power, Mrs. Green was the representative, or agent, of Mr. Headley in determining the disposition of his estate. As stated in
 
 Dant v. Fidelity & Columbia Trust Co.,
 
 302 Ky. 54, 59, 193 S.W.2d 399, 401 (1946), “the donee merely acts for the donor, and the power, when exercised, must be held to relate back to the time of the creation of the power_”
 

 Generally, when a donee exercises a special testamentary power, such exercise “is confined to the method or mode of execution provided in the power and must strictly keep within these limitations of performance and duty.” If the exercise does not comply with the manner provided for in the Trust, “it will be deemed ineffective against the parties entitled to its benefit.”
 
 DeCharette v. DeCharette,
 
 264 Ky. 525, 528, 94 S.W.2d 1018, 1020 (1936). Mrs. Green argues that the Fayette Agreements constitute an invalid attempt on her part to bind herself to transfer her interest in a specific manner contrary to the Trust’s intent. According to Mrs. Green, her attempt to contract away her testamentary power is void. As discussed in
 
 DeChar-ette,
 
 a party can only exercise a special power pursuant to the direction of the grantor.
 
 Ibid.
 
 Mrs. Green had to exercise her power by will, not contract. Mrs. Green thus claims that the Fayette Agreements, which gave her son a specific interest in the Headley Trust, are void, and none of the Trust property can be included in the debtor’s estate.
 

 We disagree. Beyond the incongruity of allowing Mrs. Green to defeat her own actions by now attacking the validity of the settlement that she willingly procured, the Agreements constitute a valid release of her power of appointment.
 
 Wood v. American Security & Trust Co.,
 
 253 F.Supp. 592 (D.D.C.1966), presented almost identical facts. In
 
 Wood,
 
 the testator left property in trust, with profits to be paid to his four children. The last surviving child was to have an unfettered testamentary power over the corpus. When the first of the four children died, the remaining three entered into an agreement that directed the trustee to dispose of the trust corpus in a specific fashion upon the death of the last survivor. Upon the death of the last survivor, the administrator of his estate claimed that the agreement was invalid. According to the administrator, the testator specifically mandated that the last surviving child dispose of the property by will. Because the children contracted away their right to dispose of the property, the administrator requested that the siblings’ agreement be voided.
 

 The court rejected this argument, holding that the agreement between the siblings constituted only a release of the power of appointment by the (as yet unknown) last survivor. The court stated that “[a] power can be released by a contract between the donee and someone who could be harmed by the appointment, such as a taker in default.”
 
 Id.
 
 at 594. Because all three siblings could have been the taker in default, and thereby could have been
 
 *149
 
 harmed by the agreement, the agreement of all three children meant that a proper release occurred. The current case is indistinguishable. The release occurred between Mrs. Green, who was the donee of the original power, and her son, who was a taker in default.
 
 [2]
 
 Therefore Mrs. Green did not violate Mr. Headley’s Trust.
 

 Kentucky law specifically contemplates release. Ky.Rev.Stat.Ann. § 386.095 states that: (1) “Any power which is exercisable by will ... whether general or special, other than a power in trust which is imperative, is releasable by written instrument signed by the donee_”
 
 [3]
 
 Moreover, the Restatement (Second) of Property, Donative Transfers § 14.3 (1977), also authorizes release:
 

 In addition to any method of release of a releasable power authorized by the donor of the power, the power can be released, in whole or in part, by the donee of the power—
 

 (1) By delivering to a person who could be adversely affected by the exercise of the power a writing declaring the extent to which the power is released; [or]
 

 (2) ....
 

 (3) By contracting with a person who could be adversely affected by an exercise of the power not to exercise the power, to the extent an exercise of the power thereafter would violate the terms of the contract.
 

 The Comment to Subsection (3) states:
 

 “A valid and enforceable contract made by the donee of a releasable power to appoint some or all of the appointive assets to a taker in default of the exercise of the power involves an undertaking by the donee not to make any appointment which would defeat such undertaking. To that extent the contract is a release of the power....”
 

 These statements are on point. Mrs. Green released her power. Restatement (Second) of Property, Donative Transfers, § 14.4 (1977) further states: “A power of appointment is indirectly released if all objects of the power effectively transfer their potential appointive interest to the takers in default of appointment.” In the present case, Jonathan Green and his siblings are both the objects of the power and the takers in default. Mrs. Green is the donee of the power, and a proper release occurred.
 

 This court is persuaded by
 
 Wood
 
 and §§ 14.2 and 14.3 of the Restatement (Second) of Property. Courts have invalidated contracts to exercise testamentary powers of appointment because of the donor’s intent that the exercise occur in the donee’s last will and testament. However, where the transfer benefits the original testator’s takers in default, no “intention of the donor of the power is defeated by the release.” Restatement (Second) of Property § 14.2 cmt. a (1977). This case presents a classic release of a power of appointment. The takers in default under the agreement were Jonathan Green and his siblings. The transfer benefited the takers in default, the intent of the donor was not defeated, and accordingly, a proper release occurred.
 

 Mrs. Green’s reliance upon on
 
 Farmer’s Loan and Trust Co. v. Mortimer,
 
 219 N.Y. 290, 114 N.E. 389 (N.Y.1916), is misplaced. In that case, Mortimer was the donee of a testamentary power of appointment. Prior to his death he contracted with a loan company to leave $25,000 to the company by “irrevocable will.” He died, leaving a different will in which he exercised his power in favor of his children. Justice Cardozo wrote: “The exercise of the power was to represent the final judgment, the last will,
 
 *150
 
 of the donee. Up to the last moment of his life, he was to have the power to deal with the share as he thought best. To permit him to bargain that right away would be to defeat the purpose of the donor.”
 
 Farmer’s Loan and Trust Co.,
 
 219 N.Y. at 293, 294, 114 N.E. at 390. Accordingly, the court held the agreement with the bank void. This case is entirely distinguishable because the bank was not a taker in default. Conversely, the
 
 Wood
 
 case, the Restatement Sections, and the present facts, all involve transfers to the taker in default.
 

 Similarly, Mrs. Green’s reliance upon
 
 O’Hara v. O’Hara,
 
 185 Md. 321, 44 A.2d 813 (1945) is unpersuasive. In that case, the donee obtained a testamentary power of appointment over his mother’s estate upon her death. When sued for divorce, the donee entered into a settlement agreement under which he agreed to “execute an irrevocable will bequeathing” one-third of his mother’s estate to his former wife upon his death.
 
 Id.
 
 at 323, 44 A.2d at 814. The donee subsequently remarried and executed a new will and testament. The court held that the first agreement with the former wife was unenforceable because his mother gave him a testamentary power of appointment, and accordingly, he could not contract away his power.
 
 O’Hara
 
 presents similar facts, but it is distinguishable in two ways. First, in that case there were no takers in default. In the present case the debtor and his siblings were the takers in default, and therefore the transfer to them satisfied Mr. Headley’s original intent in establishing the Trust. Moreover, the
 
 O’Hara
 
 court explicitly stated that it could not employ the “release” rule, because Maryland law did not allow for it. Conversely, Kentucky law explicitly sanctions releases. Ky.Rev.Stat.Ann. § 386.095. For this reason, Mrs. Green cannot find support in
 
 O’Hara.
 

 In deciding this case, we are mindful that Mrs. Green is attempting to void an agreement into which she willingly entered. Shortly after voluntarily joining in the Fay-ette Agreements, debtor Green experienced financial difficulties. The family then attempted to do what debtors from time immemorial have done: shield assets from the bankruptcy court. The best way to do this was to amend the Fayette Agreements so that the debtor no longer had a property interest in the family estate.
 

 Unfortunately for the family, as is true for so many parties in bankruptcy, the fraudulent conveyance laws hindered their maneuvering. The 1986 amendment to Mrs. Green’s will clearly contravened the fraudulent conveyance laws. The family was then in a quandary. Mrs. Green and her son then decided to claim that the Fay-ette Agreements are void, and thus the debtor has no interest in the Trust and the bankruptcy estate is left empty-handed.
 

 This court marvels at the debtor’s attempt to circumvent the fraudulent conveyance laws. However, bankruptcy courts are courts of equity.
 
 Bank of Marin v. England,
 
 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966);
 
 Pepper v. Litton,
 
 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). A court of equity will not relieve a party with “unclean hands.” This doctrine “closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief....”
 
 Cleveland Newspaper Guild v. Plain Dealer Pub. Co.,
 
 839 F.2d 1147, 1155 (6th Cir.1988) (quoting
 
 Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.,
 
 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945)). Mrs. Green essentially claims that she can evade the fraudulent conveyance laws because she had nothing to convey, despite the Fay-ette Circuit Court judgment that she procured. Mrs. Green cannot obtain relief from a bankruptcy court based upon her purported bad acts. Accordingly, her attempt to renege on the Fayette Agreements will not be sanctioned by this court.
 
 [4]
 

 For the reasons stated, we hold that the Fayette Agreements created a valid property interest in the debtor. We therefore
 
 *151
 
 REVERSE and REMAND for further proceedings.
 

 [1]
 

 . Mrs. Headley’s will was admitted to probate in 1987.
 

 [2]
 

 . Debtor Jonathan Green was a taker in default because the original Trust states that upon the death of Mrs. Green, her remainder shall be divided among her three children. Mrs. Green’s discretion under the Trust was that she could choose how to divide the remainder among her children.
 

 [3]
 

 . The power in this case is clearly not imperative. As stated in the original trust, ”[E]ach of my said children
 
 may
 
 appoint ... by his or her last will and testament by express reference to this power to or among his or her issue in such manner and such proportions as he or she may determine, and in default of the effective exercise of such power of appointment then such share of both income and principal shall be distributed
 
 as hereinabove provided.”
 
 (emphasis added).
 

 [4]
 

 . It is worth noting that not one case cited by appellee where agreements were voided,
 
 see, e.g., Farmer’s Loan and Trust Co.,
 
 involves an actor seeking relief from his or her own actions.