## In re MORT HALL ACQUISITION, INC., d/b/a Mort Hall Ford, d/b/a Sunshine Motor Company, Debtor.

### Bankruptcy No. 92–47951–H3–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 7, 1994.

---

marriage, shall become tenants in common." Fla.Stat.Ann. § 689.15 (West 1994).

Kenneth E. Rolston, Houston, TX, for debtor.

Donald B. Warshauer, Houston, TX, for Harris County.

Christopher R. Naylor, Naylor & Naylor, Houston, TX, for Ford Motor Credit Co.

Jonathan C. Hantke, Houston, TX, for Aldine I.S.D.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has heard the Second Amended Application for Payment of Taxes as Post–Petition Administrative Expenses (Docket No. 236), and after considering the pleadings, memoranda, testimony and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith. To the extent any Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

## Background

On September 18, 1992, Mort Hall Acquisition, Inc. (Mort Hall), the Debtor in this case, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Seeking priority payment for delinquent taxes, Carl S. Smith, assessor/collector for Harris County–State of Texas, filed this Second Amended Application for Payment of Taxes as Post–Petition Administrative Expenses.

Harris County's application requests that 1992 and 1993 ad valorem taxes on business personal property of debtor be paid as administrative expenses pursuant to § 503(b)(1)(B)(i) of the Bankruptcy Code. § 503 reads in relevant part:

> (B) ... there shall be allowed administrative expenses, ... including (1)(B) any tax—(i) incurred by the estate ...; and
> (C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

Additionally, Harris County's claim includes penalties and interest on such tax liability per § 503(b)(1)(C), and post-petition interest on pre-petition claims for years 1990 and 1991. The total amount of Harris County's administrative expense claim was $140,244.93, as of April 26, 1994.

Finally, the County, apparently oblivious to the procedural complexities it thus invokes, in a single short sentence requests an additional order declaring that all such administrative expenses are also secured claims. Neither Harris County's briefs nor its evidence addressed this issue, nor was the request procedurally proper. It was, however, expensive to the other parties and the United States taxpayers who maintain the Federal Court system, since any such request requires time in analysis and response.

Ford Motor Credit Company (FMCC), the primary secured creditor in this case, filed a Response in opposition to Harris County's application, as did the Debtor. Respondents' principal argument is that the 1992 tax liability was incurred by the Debtor prior to the filing of the bankruptcy petition; thus it is not eligible for status as a post-petition administrative expense. Additionally, FMCC argues that the issue of security for Harris

County's claims is not properly before the court at this time.

Respondents apparently concede that Harris County is entitled to payment of taxes for 1993. However, Debtor contests the classification of such taxes as administrative expenses. Mort Hall references this Court's previous Memorandum Opinion of March 31, 1994, finding Harris County's claim for 1993 taxes (all post-petition) to be secured by a valid lien, and asserts that allowance of administrative expense status would be akin to providing double payment to Harris County.

On May 13, 1994, a hearing on Harris County's instant application was held before this Court. At that time, Harris County produced witnesses and exhibits aimed only at demonstrating the use of tax dollars such as those due from Debtor. Such evidence included maintenance of roads and highways, flood control activities, provision of title processing services, and the general protection afforded all persons and property by the sheriff's department.

At the close of evidence, this Court requested briefs from the parties addressing the following issues:

(1) The moment of inception of the taxes;

(2) The moment of inception of the lien securing taxes; and

(3) Whether interest is payable under the Bankruptcy Code and Fifth Circuit caselaw.

All of the parties filed briefs with this Court. The briefs focused only on the nature of the general services provided by Harris County's taxes. Harris County insists that the evidence produced at hearing is sufficient to meet the burden of proof for purposes of § 503(b)(1)(A) of the Bankruptcy Code. Its reasons for seeking status under § 503(b)(1)(A), in addition to the status all taxing authorities enjoy under § 503(b)(1)(B) and (C), were never made clear.

In support, Harris County cites *In re Martin*, 106 B.R. 334 (Bankr.D.Me.1989), and *In re Klefstad*, 95 B.R. 622 (Bankr.W.D.Wis. 1988). At the outset, it is important to note that these cases address the question of whether property taxes may be assessed post-petition without violating the automatic stay provision of § 362(a). In that context, courts have found that the act of assessment does not violate the stay, in light of the necessity of protection by the state or municipality. However, to accord the taxes so assessed a particular priority under § 503(b)(1)(A) using this reasoning unnecessarily tortures the language of the statute in light of the tax status Congress specifically provides in the next subparagraphs, (B) and (C).

Mort Hall urges in addition that Harris County's claim would not meet the requirements of § 503(b)(1)(A), as outlined in *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409 (5th Cir.1992), even if the County were eligible under § 503(b)(1)(A). Debtor's assertion is that the services provided did not enhance the ability of the Debtor–in–Possession to function as a going concern, and that Harris County's highway construction along Debtor's access road was disruptive to business, deterred customers, and contributed to the demise of the Debtor's operations. Mort Hall thus claims that the resultant tax debt does not benefit the estate and its creditors as required by *NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

In addition, FMCC and Mort Hall assert that Harris County's claim can not be paid out of FMCC's secured inventory proceeds even if the administrative expense claim for 1992 taxes were allowed. Although Harris County's pleadings did not specifically address § 506(c) of the Code, FMCC and Mort Hall address it and urge that the requirements of § 506(c) have not been met:

§ 506(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

FMCC and Mort Hall urge that Harris County's presentation of services provided by tax dollars is insufficient to meet this burden of proof. Incidental benefits derived from property taxes do not trigger § 506(c); the benefits to secured creditors must be direct

and quantifiable. *In re Glasply Marine Industries, Inc.*, 971 F.2d 391 (9th Cir.1992).

### Analysis

#### I. *Status of Security for Harris County's Tax Claims*

■ FMCC urges that the matter of security for Harris County's tax claims is not before the court in this proceeding, and the court takes judicial notice of two items. First, Harris County has filed proofs of claim for 1990 and 1991 taxes, penalties and interest which assert that such claims are secured. Although a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim, Bankruptcy Rule 3001(f), the time period for filing objections to proofs of claim has not yet expired. Additionally, a proceeding to determine the validity, priority, or extent of a lien or other interest in property must be brought in the form of an adversary proceeding. Bankruptcy Rule 7001(2). In view of these facts, this Court makes no determination as to the secured status of the claims for 1992 ad valorem taxes, or of the claims for 1990 and 1991 interest and penalties.

This Court has previously examined the issue of secured status of the 1993 taxes and found that for the postpetition tax year 1993, Harris County has a valid lien on the vehicle inventory. (Memorandum Opinion dated March 31, 1994.)

#### II. *1992 (Filing Year) Taxes as Administrative Expenses*

■ The primary issue before the court at this time is whether the 1992 taxes were "incurred" before or after the filing of the Chapter 11 petition on September 18, 1992. In order for a tax to be accorded administrative expense status under § 503(b)(1)(B)(i), it must have been incurred by the estate, thus it must occur post-petition. All three of the parties have cited the following cases: *In re T & T Roofing and Sheet Metal, Inc.*, 156 B.R. 780 (Bankr.N.D.Tex.1993); *In re Fairchild Aircraft Corp.*, 124 B.R. 488 (Bankr. W.D.Tex.1991); and *In re 7003 Bissonnet, Inc.*, 153 B.R. 455 (Bankr.S.D.Tex.1992).

The *T & T* court focused upon the date on which the tax lien and liability for payment

attach, which is January 1. Tex.Tax Code Ann. §§ 32.01 & 32.07 (Vernon Supp.1994). The court in *Fairchild* stated that the "act" of assessment occurs on October 1, the date the tax bill is mailed. Tex.Tax Code Ann. § 31.01. Finally, a proration method of distributing the filing-year tax liability between the debtor and the estate was adopted in *7003 Bissonnet.*

■ The rationale of each decision is apparent. This Court finds the approach in *T & T* to be most persuasive. As of January 1, 1992, Harris County had an unliquidated right to payment of ad valorem taxes on business personal property owned by the Debtor, contingent upon a subsequent act of assessment. *T & T* at 782. Such a right to payment is a "claim" as defined in § 101(5)(A) of the Bankruptcy Code. As a claim arising prior to the filing of the bankruptcy petition, Harris County's 1992 tax was not incurred by the estate; thus it is not entitled to treatment as an administrative expense under § 503(b)(1)(B)(i).

■ Although the parties expended considerable effort in arguing whether the requirements of § 503(b)(1)(A) had been met, tax claims receive administrative expense status by action of § 503(b)(1)(B) & (C). No authority was offered for Harris County's position that it was covered by § 503(b)(1)(A) as well, nor does the legislative history support this assertion. The Court declines to treat tax claims as "actual, necessary costs and expenses of preserving the estate" for purposes of § 503(b)(1)(A). See also *Mark IV Properties, Inc. v. Club Development & Management Corp.*, 27 B.R. 610, 611 (Bankr. 9th Cir.1982); *Transamerican Natural Gas, supra; NL Industries, Inc. v. GHR Energy, supra.*

#### III. *1993 Taxes*

■ The 1993 tax liability is post-petition. Debtor does, however, object to administrative expense status for the 1993 taxes due to the fact that this court has previously ruled that Harris County has a perfected lien on the vehicle inventory for 1993 taxes. Debtor insists that allowing the administrative expense claim would be akin to permit-

ting a double payment. Allowing payment under two priority levels, however, does not permit double payment, and nothing in the Bankruptcy Code precludes a claim from having both secured and administrative expense status. See *Stanford v. Butler*, 826 F.2d 353 (5th Cir.1987). As the 1993 taxes were undeniably incurred by the estate post-petition under § 503(b)(1)(B)(i), they are allowed as administrative expenses.

### IV. *Post–Petition Interest on Pre–Petition Claims*

 None of the parties took the opportunity to brief the issue of whether post-petition interest on a pre-petition claim is allowable as an administrative expense. This Court notes that "the general rule in bankruptcy and equity receivership has been that interest on the Debtors' obligations ceases to accrue at the beginning of proceedings." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). In order to be payable as an administrative expense under § 503(b)(1)(C), a "fine, penalty, or reduction in credit" must be related to a tax of a kind accorded administrative expense status under § 503(b)(1)(B). As the underlying tax liability for years 1990 and 1991 was incurred by the Debtor pre-petition, it does not qualify. Thus, Harris County's request for post-petition interest on such claims for the pre-petition year 1990 and 1991 is not allowed as an administrative expense.

### V. *Post–Petition Penalties and Interest on Post–Petition Claims*

 Section 503(b)(1)(C) allows penalties relating to taxes allowed under § 503(b)(1)(B) to be treated as administrative expenses. See *United States v. Friendship College Inc.*, 737 F.2d 430, 432–33 (4th Cir. 1984). The statute does not specifically mention interest. Among the courts that have heard the matter, there is strong support for both allowance and disallowance of related post-petition interest. See *United States v. Flo–Lizer*, 916 F.2d 363 (6th Cir.1990). But see *In re American Int'l Airways*, 77 B.R. 490 (Bankr.E.D.Pa.1987). The argument of the *American Int'l Airways* court is that the statutory history of § 503 indicates that a provision for interest was initially made by the Senate, but subsequently removed from the version of § 503 which was included in the Bankruptcy Code. That court took such Congressional action as an indication that interest was specifically disallowed under § 503. *American Int'l Airways* at 495. The *Flo–Lizer* court, however, noted that the word "including," which precedes "any fine, penalty, or reduction in credit" in § 503, is not a limiting term. Bankruptcy Code § 102(3). In the absence of any expressed Congressional intention to abrogate the pre-Code opinion in *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) (allowing post-petition interest as an administrative expense), the *Flo–Lizer* court reasoned that § 503(b)(1)(C) permits interest as an administrative expense. The Fifth Circuit has not yet ruled on this issue. This Court finds most persuasive the Fourth Circuit's approach in *Flo–Lizer*, which is also that of the Fourth, Ninth and Eleventh Circuits, which allow such interest. See also, *Friendship College* at 433; *Flo–Lizer* at 365; *United States v. Ledlin*, 886 F.2d 1101, 1102 (9th Cir.1989); *United States v. Cranshaw*, 885 F.2d 837, 839 (11th Cir.1989). Harris County's application for administrative expense status for post-petition penalties and interest on the 1993 tax claim is therefore allowed.

### VI. *Payment of Administrative Expenses from FMCC's Collateral Under § 506(c)*

It is unnecessary to reach the issue of whether payment for Harris County's administrative expense claims for 1992 taxes may be made from proceeds of FMCC's collateral under § 506(c), since the County's administrative expense claims for 1992 have been denied.

### *Conclusions*

Based upon the foregoing Findings of Fact and Conclusions of Law, it is Ordered that Harris County's Second Amended Application for Payment of Taxes as Post–Petition Administrative Expenses (Docket No. 236), is granted in part, and denied in part. With

respect to 1993 ad valorem taxes, penalties, and interest, Harris County's request for payment of administrative expenses is granted. As to 1992 ad valorem taxes, and post-petition interest on 1990 and 1991 taxes, Harris County's application for payment of these as administrative expenses is denied.