DONALD, J., delivered the opinion of the court in which WHITE, J., joined. O’MALLEY, J. (pp. 819-25), delivered a separate dissenting opinion.
OPINION
BERNICE BOUIE DONALD, Circuit Judge.
In a case under Chapter 7 of the Bankruptcy Code,[1] three unsecured creditors *813 successfully removed the bankruptcy trus.tee for misfeasance. The successor trustee then commenced an adversary proceeding against his predecessor, reaching a settlement that significantly increased the amount of funds available for the § 541(a) bankruptcy estate and its creditors. Despite determining that they had contributed substantially to achieving the settlement, the United States Bankruptcy Court for the Eastern District of Michigan denied the subsequent application of two creditors, Mediofactoring and Coface Argentina (collectively, “Cofaee”), for reimbursement of administrative expenses.[2] According to the court, 11 U.S.C. § 503(b), which governs the allowance of administrative expenses, does not authorize such reimbursement in a Chapter 7 case.
The United States District Court for the Eastern District of Michigan affirmed the bankruptcy court’s conclusion, and Coface now appeals to this Court, supported by the successor trustee as amicus curiae. For the reasons that follow, we REVERSE the district court’s judgment and hold that administrative expenses are allowable in these circumstances under § 503(b) in a Chapter 7 case.
I.
A Chapter 7 petition was filed against Connolly North America, LLC (“Connolly”) in the Bankruptcy Court in 2001.[3] See In re Connolly N. Am., 376 B.R. 161, 164 (Bankr.E.D.Mich.2007). In 2005, Mark H. Shapiro (“Shapiro”), who was then the bankruptcy trustee, initiated an adversary proceeding. Id. at 165. In 2007, the bankruptcy court concluded that Shapiro and his attorney had breached their dis-' covery obligations due to gross negligence. Id. at 164-65. The court therefore dismissed Shapiro’s claims with prejudice. Id. at 165.
Three of Connolly’s unsecured creditors, among them Coface, subsequently filed a motion to remove Shapiro from the position of bankruptcy trustee. See In re Connolly N. Am., 479 B.R. 719, 721 (Bankr. E.D.Mich.2012). They prevailed, and Bruce Comly French (“French”), Shapiro’s successor, then commenced an adversary proceeding against Shapiro, his law firm, and his professional-liability insurer for damages. The parties reached a court-approved settlement in 2012, and the bankruptcy court recognized “that at least some of the work that Coface paid its attorneys to do in this case substantially benefitted the bankruptcy estate and the unsecured creditors, and contributed greatly to there being a significant increase [in] the amount of funds that the unsecured creditors w[ould] receive.” In re Connolly N. Am., 479 B.R. at 722.
Consequently, Coface applied for reimbursement of $164,336.28 in attorney fees and costs “under the general authority to allow ‘administrative expenses’ ... in the opening clause of [11 U.S.C.] § 503(b).”[4] Id. at 720. The U.S. trustee opposed Co-face’s application, and the bankruptcy court denied it, concluding that § 503(b) does not authorize the requested reimbursement. In re Connolly N. Am., 479 *814 B.R. at 723. As the bankruptcy court saw the matter, Congress’s failure to extend § 503(b)’s express provision for reimbursement for a creditor that makes “a substantial contribution in a case under chapter 9 or 11 [of the Bankruptcy Code],” § 503(b)(3)(D), to a creditor making such a contribution in a case under Chapter 7 reflected “a Congressional intent” to deny reimbursement in Chapter 7 cases.[5] In re Connolly N. Am., 479 B.R. at 723.
Coface- then appealed to the district court, which agreed with the bankruptcy court. According to the district court, Co-face’s “proposed reading of § 503(b) ... runs afoul of the ‘well-established canon of statutory interpretation’ that ‘the specific governs the general.’ ” In re Connolly N. Am., 498 B.R. 772, 775 (E.D.Mich.2013) (quoting RadLAX Gateway Hotel, LLC v. Amalgamated Bank, — U.S. -, 132 S.Ct. 2065, 2070-71, 182 L.Ed.2d 967 (2012)). Additionally, the district court explained, “[t]he authority to address any inequities which may be present in the application of the plain meaning rule to § 503(b) is vested in Congress, not the courts.” Id. at 776 (quotation omitted) (alteration in original).
This timely appeal followed, and we allowed French to participate in the appeal as amicus curiae in support of Coface.
II.
A.
When we consider an appeal that originated in bankruptcy court, “our review process is slightly different from our normal standard of review[.]” Barlow v. M.J. Waterman & Assocs. (In re M.J. Waterman & Assocs.), 227 F.3d 604, 607 (6th Cir.2000). “[W]e directly review the bankruptcy court’s decision rather than the district court’s review of the bankruptcy court’s decision,” id., recognizing that we are “in as good a position to review the bankruptcy court’s decision as is the district court,” XL / Datacomp v. Wilson (In re Omegas Group), 16 F.3d 1443, 1447 (6th Cir.1994) (citation and internal quotation marks omitted). We examine the bankruptcy court’s findings of fact for clear error and consider its conclusions of law de novo. Zingale v. Rabin (In re Zingale), 693 F.3d 704, 707 (6th Cir.2012) (citing Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee), 530 F.3d 458, 463 (6th Cir.2008)). At issue in this appeal is a single conclusion of law: the bankruptcy court’s statutory construction of § 503(b)(3)(D) as a per-se bar to reimbursement of the instant administrative expenses under § 503(b) in this Chapter 7 proceeding. We therefore apply the de novo standard of review.
B.
We begin with principles. The first is the “overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction[,]” highlighted by the Supreme Court in Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); see also Green v. Green (In re Green), 986 F.2d 145, 150 (6th Cir.1993). Bankruptcy courts are thus “specialized court[s] of equity.” Curtis v. Loether, 415 U.S. 189, 195, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). And although their equitable powers “are not unlimited,” their decisions are unimpeachable so long as these powers are “ ‘exercised within the confines of the Bankruptcy Code.’” Architectural Bldg. Components v. McClarty (In re Foremost Mfg. Co.), 137 F.3d 919, 924 (6th Cir. *815 1998) (quoting In re Omegas Group, 16 F.3d at 1453).
The second principle is that statutory language is the keystone on which all other analysis relies. Thus, “[t]he task of resolving the dispute over the meaning of [the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself.” United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the language is clear, we need not look further because Congress “says in a statute what it means ánd means in a statute what is says.” Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); see also Ron Pair, 489 U.S. at 241,109 S.Ct. 1026. Consequently, we have checked the bankruptcy court’s exercise of its equitable powers where that exercise contradicts the plain, unambiguous meaning of the Bankruptcy Code. See, e.g., In re Foremost Mfg. Co., 137 F.3d at 923 (“We prefer this ‘plain meaning’ approach for the simple reason that [the provision of the Bankruptcy Code in question] is unambiguous.”).
With these key principles in mind, we turn to the case at bar. Where, as here, reimbursement of administrative expenses properly follows from the totality of the pertinent facts, interpretation of the statutory language, and relevant equitable considerations, we hold that § 503(b) allows for reimbursement in Chapter 7 cases.
C.
The text of the Bankruptcy Code supports this view. Section 503(b) states that administrative expenses may be awarded regarding nine categories of claims that it expressly deems reimbursable. One such category, set out in § 503(b)(3)(D), authorizes reimbursement for creditors who have made “substantial eontribution[s]” in cases under Chapters 9 and 11 of the Bankruptcy Code. However, there is no similar express statutory provision for creditors in Chapter 7 cases:
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-
(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.
11 U.S.C. § 503(b)(3)(D) (emphasis added).
There is general agreement among the parties and courts that § 503(b) would allow for reimbursement in the present case were it not for Congress’s supposed signaling of a contrary intent in § 503(b)(3)(D). See, e.g., In re Connolly N. Am., 479 B.R. at 723 (“[T]he Court concludes that no administrative expense may be allowed, based on the opening clause of § 503(b), for a creditor’s substantial contribution in a Chapter 7 ease [because] the provision in § 503(b)(3)(D), expressly allowing an administrative expense for a creditor who makes a substantial contribution in a Chapter 9 or Chapter 11 case, but not extending that to a Chapter 7 case, shows a Congressional intent not to extend administrative expense treatment to such a creditor in a Chapter 7 case.”) (emphasis in original). The question, therefore, is whether the inclusion of the “substantial contribution in a case under chapter 9 and 11 ” language in subsection (b)(3)(D) negates the meaning of “including” in the introductory provision of § 503(b) and divests bankruptcy courts of the authority to *816 allow reimbursement of administrative expenses incurred by a Chapter 7 creditor who makes a substantial contribution to the debtor’s estate. The bankruptcy court answered this question in the affirmative, holding that Coface’s claim for reimbursement must fail because it arises out of a Chapter 7 case.
But the plain language of the Act does not compel this conclusion. Nowhere does the Act say, “expenses incurred by a creditor in securing the removal of a Chapter 7 trustee are not allowable”; or, “expenses incurred in making a substantial contribution in a case under Chapters 9 or 11, but not Chapter 7,. may be allowed”; or, “only the enumerated expenses shall be allowed.” Thus, courts addressing this issue, including the bankruptcy court and district court in the present case, must rely on established canons of statutory construction to interpret § 503(b).
D.
Our jurisprudence instructs that claims for expenses under § 503(b) be strictly construed because they “reduce the funds available for creditors and other claimants.” City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep’t Stores, Inc.), 270 F.3d 994, 1000 (6th Cir.2001) (citation omitted). There is, however, broad consensus that the categories listed in the statute are not exhaustive. See, e.g., In re Al Copeland Enters., 991 F.2d 233, 239 (5th Cir.1993); United States v. Ledlin (In re Mark Anthony Constr., Inc.), 886 F.2d 1101, 1106 (9th Cir.1989); In re T.A. Brinkoetter & Sons, Inc., 467 B.R. 668, 670 (Bankr.C.D.Ill. 2012); Pergament v. Maghazeh Family Trust (In re Maghazeh), 315 B.R. 650, 654 (Bankr.E.D.N.Y.2004).
We have noted previously that the Bankruptcy Code itself encourages an expansive reading of § 503(b). The statute explains in. § 102(3) that the terms “ ‘includes’ and ‘including’ are not limiting[.]” See United States v. Flo-Lizer, Inc. (In re Flo-Lizer, Inc.), 916 F.2d 363, 365 (6th Cir.1990). Consequently, we held that Congress’s failure to expressly designate a given expense as allowable under § 503(b) does not mean that it is excluded. See In re Flo-Lizer, Inc., 916 F.2d at 365 (“[T]he failure of Congress to expressly list interest as an administrative expense [in a subsection of § 503(b) ] does not mean that it cannot be an administrative expense.”); In re George Worthington Co., 921 F.2d 626, 634 (6th Cir.1990) (“Although we fail to find express authority for the reimbursement of an official committee’s administrative expenses in the Code, we believe it is implied in the overall scheme for reorganization and in the legislative history of the Code and its amendments.”).
On the contrary, by using the term “including” in the opening lines of the subsection, Congress built a mechanism into § 503(b) for bankruptcy courts to reimburse expenses not specifically mentioned in § 503(b)’s subsections. The insertion of the term indicates that Congress did not intend to provide an exhaustive list of allowable expenses. Rather, it appears that Congress anticipated that bankruptcy courts would encounter a variety of administrative expenses and circumstances warranting reimbursement, which it could then evaluate on a case-by-case basis depending on the specific facts of the case, the benefit, conferred upon the bankruptcy estate and its creditors, and whether the expenses at issue were actual, necessary, and reasonable.
To be sure, the examples in the subsections of § 503(b) are not meaningless. They provide a contextual framework, describing obligations of the bankruptcy estate, such as wages and taxes, and situations where the trustee, creditors, creditor committees, and others administer, pre *817 serve, or augment the estate. Congress intended to provide guidance, and in doing so, it set forth the more common administrative expenses intended to be allowed. It makes good sense that in providing these examples, Congress would expressly mention Chapters 9 and 11 in the context of creditor activity making a “substantial contribution,” but not Chapter 7. In both Chapters 9 and 11, as a matter of course, a creditor will spend its own time and resources to benefit the estate; however, in all but the most atypical Chapter 7 case (such as the instant case), the U.S. trustee fulfills this role. See H.R.Rep. No. 95-595 at 88 (1978), 1978 U.S.C.C.A.N. 5963, 6049 (reprinted in 1978 U.S.C.C.A.N. at 5787, 5963, 6049) (stating that the primary role of the U.S. trustees is to serve as the “bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena”).
The U.S. trustee is tasked with, among other things, “monitoring the progress of cases under [the Bankruptcy Code] and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress.” 28 U.S.C. § 586(a)(3)(G). If the U.S. trustee determines that the acting trustee failed “to safeguard or to account for estate funds and assets,” or believes that the acting trustee has delivered “[sjubstandard performance of general duties and case management,” the U.S. trustee may remove the acting trustee. 28 C.F.R. § 58.6(a)(1), (4). And if the U.S. trustee does not see cause to remove the acting trustee, a creditor typically must only file a motion with the bankruptcy court to have the acting trustee’s conduct reviewed. See 11 U.S.C. § 324 (providing the bankruptcy court with authority to remove an acting trustee). Such a motion alerts the U.S. trustee of the issue and, in theory, prompts an investigation. Thus, in a properly administered case under Chapter 7, a creditor will not be in a position to “substantially contribute” to the estate by pursuing the acting trustee’s removal and prosecuting a claim on behalf of the estate.
As this case demonstrates, however, the U.S. trustee is not a fail-proof safeguard, and in protect the estate as a whole.[6] It is worth noting that, had the U.S. trustee fulfilled its duty as the “bankruptcy watchdog” here, there is no question that the estate would have paid the expenses associated with removing the former trustee and prosecuting the malpractice action. See 11 U.S.C. §§ 326, 330. Thus, the construction favored by the bankruptcy court, the U.S. trustee, and the dissent results in the disallowance of an administrative expense that would have been allowed had the bankruptcy proceeded as intended by the Bankruptcy Code.
' E.
The U.S. trustee, the bankruptcy court, and the dissent conclude that the clear language of inclusion is trumped by implication, relying on the precept expressio unius est exclusio alterius (“the expression of one thing excludes others”) and the *818 Supreme Court’s endorsement of the “ ‘well-established canon ... of statutory construction that the specific governs the general’ ” in RadLAX, 132 S.Ct. at 2070-71 (quoting Morales v. Tram World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)). They reason that a specific subsection of the Bankruptcy Code — like § 503(b)(3)(D)’s express authorization for administrative expenses in cases under Chapters 9 and 11 — “[cannot] be ignored by relying on a general subsection” like § 503(b)’s prefatory decree that “there shall be allowed administrative expenses.” But nothing about our interpretation ignores the mandate in § 503(b)(3)(D). If anything, our approach reflects a more comprehensive understanding of the general/specific canon and its implications in this context.
First, although RadLAX extolled the virtues of the general/specific canon, that case concerned § 1129(b)(2)(A) of the Code, not § 503(b). See 132 S.Ct. at 2068. Neither the term “include” — nor any variation thereof — is to be found in § 1129(b)(2)(A). Accordingly, applying the Supreme Court’s reasoning in RadLAX to this case would disturb yet another “ ‘cardinal principle of statutory construction,’ ” TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)): that, whenever possible, a statute should be construed so that “ ‘no clause, sentence, or word shall be superfluous, void, or insignificant,’ ” id. Congress deliberately inserted “including” into the text of § 503(b) and expressly instructed, in § 102(3), that the term “[is] not limiting[.]”
Second, Congress was fully capable of stating that § 503(b) excludes reimbursement in Chapter 7 cases if that is what it actually intended the statute to do'. Cf. United States v. Murphy, 241 F.3d 447, 456 (6th Cir.2001) (quoting United States v. Fuller, 86 F.3d 105, 106 (7th Cir.1996) and United States v. Miranda, 986 F.2d 1283, 1284 (9th Cir.1993)) (noting that Congress did not restrict the “ ‘limitless delay provision’ ” of one statute with the time limits of another “ ‘[although it was certainly capable of doing so’ ”). It did not. “ ‘We refuse, therefore, to find a limitation where Congress did not expressly create one.’ ” Id. (quoting Miranda, 986 F.2d at 1284).
F.
Without doubt, balancing policy concerns in the bankruptcy arena is ■ entrusted to Congress. Our job as a court is simply to respect the intended meaning of the Bankruptcy Code and enforce that meaning, leaving Congress to assess the outcome. But in discerning that intended meaning, we properly look to the overall intent and purpose of the Code. Failing to award administrative expenses to the rare Chapter 7 creditors who are forced by circumstances to “tak[e] action that benefits the [bankruptcy] estate when no other party is willing or able to do so,” would deter them from participating in bankruptcy cases and proceedings, which is plainly inconsistent with the purposes of the Act. This militates in favor of interpreting § 503(b) to embrace reimbursement of administrative expenses in cases such as this one and § 503(b)(3)(D) as not divesting the bankruptcy courts of the authority to do so.
The U.S. trustee insists that Coface already has “reaped benefits” from participating in Connolly’s Chapter 7 cases. “As the creditor holding roughly 50% of the amount of the unsecured claims,” the U.S. trustee observes, “Coface will receive roughly 50% of the net increase in distributions that are paid to unsecured creditors because of [its] work.” This is true, but it is true of other allowable expenses, *819 as well. And while it is also true that the size of Cofaee’s claim was sufficient to prompt it to undertake the effort, this view discounts the uncertainty involved. Co-face had no way of knowing when it undertook to remove Shapiro from the position of bankruptcy trustee that it ultimately would be successful; nor could it foresee that French’s subsequent adversary action against Shapiro would result in valuable and meaningful net gains to the bankruptcy estate. A creditor with a lesser claim may have simply walked away and declined to take actions that benefited the estate as a whole. Further, although Co-face recovered a substantial portion of the settlement it made possible, it will nonetheless pay a share of any administrative expense allowed because that expense will reduce the amount distributed to all of the unsecured creditors pro rata.
Denying creditors reimbursement of administrative expenses in such circumstances not only would disincentivize participation in the bankruptcy process, it also would impugn the fundamental notion of bankruptcy as equitable relief.[7] As neither Congress nor case law compels such a result, we will not dictate it under the circumstances of this case.' Instead, we hold that § 503(b)(3)(D) of the Bankruptcy Code does not divest bankruptcy courts of authority to allow reimbursement under § 503(b) of reasonable administrative expenses of creditors whose efforts substantially benefit the bankruptcy estate and its creditors in a Chapter 7 proceeding.[8]
III.
For these reasons, we REVERSE the judgment of the District Court and REMAND for consideration of the merits of Coface’s request.[9]

. "Bankruptcy Code” refers to Title 11 of the United States Code.

. The third creditor did not join in the application and is not a party to this appeal.

. The Bankruptcy Code provides for five different kinds of bankruptcy cases. One of these arises under Chapter 7, which enables individuals to discharge certain debts that they cannot afford in exchange for surrendering certain non-exempt assets. See 11 U.S.C. § 701, et seq. Chapter 7 only applies to individuals (or proprietorships); it does not apply to corporations, partnerships, LLCs, or other legal entities. 11 U.S.C. § 727(a).

.Section 503(a) authorizes such applications.

. See supra note 3. Chapter 9 provides for municipal reorganizations, see 11 U.S.C. § 901, et seq., and Chapter 11 allows for reorganizations and liquidations of corporations, partnerships, LLCs, and individuals, see id.

. In this case, it appears that the unsecured creditors, acting trustee, and bankruptcy court all agree that Coface’s role in removing the former trustee and prosecution of the malpractice suit substantially benefitted the estate. See In re Connolly N. Am., LLC, 498 B.R. at 773-76. Further, it does not appear that any of these parties objected to Coface’s motion for administrative expenses, and the U.S. trustee only takes issue with the motion because of § 503(b)(3)(D)’s language purporting to limit reimbursement for "substantial contributions” to Chapters 9 and 11. Accordingly, without the language of § 503(b)(3)(D), it appears that Coface’s reimbursement would have been authorized without objection. This does not resolve the issue before us, but it strongly suggests that Coface’s actions are the type of conduct befitting reimbursement as an administrative expense.

. See supra pp. 814-15.

. To be sure, and as the dissent points out, this interpretation is contrary to holdings of the Third Circuit and the cases relying on its reasoning. See Lebron v. Mechem Fin., Inc., 27 F.3d 937, 945 (3d Cir.l994) ("There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that [such] expenses were intended to be reimbursable under those provisions or not at all.”). We are also aware that, when analyzing a claim for derivative standing, we have stated in dictum that:
[T]here is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts [for derivative standing]. Section 503(b)(3)(B) ... applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of
§’503(b)(3) to Chapters 9 and 11. See § 503(b)(3)(D).
In re Trailer Source, Inc., 555 F.3d 231, 243 (6th Cir.2009). We conclude, however, that these cases are wrongly decided.

.We note, for purposes of clarity, that unlike a properly filed and executed pre-petition proof of claim, see Fed. R. Bankr.3002, applications for reimbursement of administrative expenses under § 503 (b) — for which § 503(a) provides — do not constitute prima facie evidence of the validity and amount of the administrative expenses at issue. However, the bankruptcy court expressly concluded "that at least some of the work that Coface paid its attorneys to do in this case substantially bene-fitted the bankruptcy estate and the unsecured creditors, and contributed greatly to there being a significant increase [in] the amount of funds.” In re Connolly N. Am., 479 B.R. at 722. We leave it to the bankruptcy court to evaluate the request in the first instance as it would any request under § 503(b).