### IN RE: John WATSON, Debtor.

### Bankruptcy Case No. 07–21077 EEB

United States Bankruptcy
Court, D. Colorado

June 12, 2013

---

Kenneth J. Buechler, 1621 18th St., Ste. 260, Denver, CO, for Debtor.

Chapter 7

### ORDER DENYING ADMINISTRATIVE EXPENSE

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on the Motion For Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b) ("Motion"), filed by Snell & Wilmer L.L.P. ("S & W"), the objection thereto filed by Alpine Bank, and supplemental briefs filed by both parties. The Court having reviewed the file and being further advised in the premises, hereby FINDS and CONCLUDES

## I. BACKGROUND

This matter involves two related bankruptcy cases—the above captioned chapter 7 case of John Watson and the bankruptcy case of Local Service Corp. ("LSC"), a business that Watson formerly owned. Mr. Watson filed his case first in September 2007, and Jeffrey Weinman was appointed chapter 7 trustee. Because Mr. Watson's interest in LSC became part of his bankruptcy estate, Mr. Weinman gained control over that entity and caused LSC to file a chapter 11 bankruptcy petition on April 25, 2008. LSC remained a debtor-in-possession for nearly two years. During that period, Mr. Weinman had authority over both Watson's estate (as Trustee) and LSC's estate (as debtor-in-possession).

In May 2008, LSC filed an application to employ S & W as special counsel. The motion to employ speculated that Watson may have caused LSC to fraudulently transfer its ownership interests in certain real property to other entities which were owned and operated by Watson's friends and family, but controlled by Watson. LSC sought to employ S & W on a contingency basis to investigate and pursue any fraudulent or preferential transfer claims, as well as alter ego claims that LSC might have. S & W was to be paid 33.3% of any recoveries. The Court approved LSC's retention of S & W by order dated June 20, 2008.

Of importance here is an adversary LSC jointly commenced with the Watson estate against Blake Industrial Park, LLC ("BIP"). The complaint asserted claims of fraudulent transfer and reverse piercing of the corporate veil against BIP, and alleged that Watson and/or LSC had created BIP and made various transfers of real property to BIP for no consideration in order to shield the properties from creditors. Because Weinman did not seek to employ S & W as special counsel in the Watson case, S & W represented only LSC in the BIP adversary. Initially, Weinman acted as his own counsel in representing the Watson estate. About three months after filing of the BIP adversary, the Watson estate employed separate counsel, Bruce Coles, and Mr. Coles entered his appearance in the BIP adversary.

The BIP adversary continued for several years, with the parties requesting multiple abeyances and extensions of the trial date. Finally, in February 2012, the parties reached a settlement.[1] By this time, a chapter 11 trustee (Simon Rodriguez) had been appointed in the LSC case. Mr. Weinman and Mr. Rodriquez, as trustees, negotiated the settlement, which contemplated BIP's sale of the properties at issue to a third party and the distribution of net sale proceeds to the parties. Under the terms of the agreement approved by this Court, net proceeds of the settlement, after payment of certain carve-outs and expenses, was approximately $1.8 million. Of that amount, the first 25% or roughly $450,000, was paid to the Watson estate based on that estate's 25% ownership interest in BIP. The remaining $1.3 million was split between BIP and the estates of Watson and LSC. The $676,000 paid to the trustees was then split evenly, with each estate getting approximately $338,000. This means that the Watson estate ended up with approximately $790,000, while the LSC estate got only $338,000.

S & W subsequently filed a fee application in the LSC case, requesting payment of its contingency fee. This Court granted

---

1. The settlement also resolved another adversary brought by LSC against Watson's wife. That adversary involved different property located in Carbondale, Colorado. It did not involve the property that resulted in payment of settlement funds.

that application, awarding S & W attorneys' fees in the amount of $105,787 and costs in the amount of $21,048, for a total of $126,836. Not happy that this amount did not cover all of the fees it incurred, S & W filed its Motion seeking an administrative expense in the Watson case. S & W argues it is entitled to additional $120,000 payment as an administrative expense under § 503(b)(3)(B), (b)(3)(D) and (b)(4). Alpine Bank filed an objection to the expense request, arguing S & W lacks standing to request payment under § 503(b)(3) and, in any event, did not actually represent the Watson estate in the BIP adversary.

## II. DISCUSSION

 Administrative expenses allowable under § 503(b), including legal fees, are entitled to priority in payment under § 507(a)(2). For this reason, courts narrowly construe the priorities allowed under § 503(b) because "the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *Isaac v. Temex Energy Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988) (internal citation omitted). The party claiming an administrative expense claim bears the burden of proving that the claim is entitled to priority treatment by a preponderance of the evidence. *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1132 (10th Cir.1993); *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 249 (Bankr.D.Colo.1990).

### A. Section 503(b)(3)(B)

 S & W first requests an administrative expense under § 503(b)(3)(B), which provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor[.]

11 U.S.C. § 503(b)(3)(B). This section allows creditors to be compensated on a priority basis for their efforts in recovering property for the benefit of the estate. *See Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 240 (6th Cir.2009). By its explicit terms, § 503(b)(3)(D) is limited to "creditors" who have obtained "court approval" to recover assets on a debtor's behalf. S & W meets neither of these requirements. S & W is not a creditor of the Watson estate and it did not directly (as a party) file a claim to recover property transferred from the Watson estate, nor seek court approval to do so. Furthermore, § 503(b)(3) specifically excludes compensation and reimbursement of a kind specified in section 503(b)(4). That section covers reimbursement for professional fees of an attorney—which was what S & W is seeking. Thus, S & W's request is more appropriately considered under § 503(b)(4). *See* 4 Collier on Bankruptcy ¶ 503.10[1][a] ("If an entity that qualifies for administrative expense priority seeks reimbursement for professional fees, it must seek such reimbursement under section 503(b)(4) rather than section 503(b)(3).").

 Section 503(b)(4) provides that:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(4). A key phrase in this subsection is that compensation is available for services rendered by "an attorney ... *of an entity whose expense is allowable* under subparagraph (A), (B), (C), (D), or (E) of paragraph (3)." 11 U.S.C. § 503(b)(4) (emphasis added). S & W acted as attorney for LSC. S & W has made no showing that LSC is "an entity" entitled to an administrative expense under § 503(b)(3)(B). As outlined above, recovery under § 503(b)(3)(B) is limited to creditors who have court approval to recover an asset on behalf of the debtor. LSC was not a creditor of the Watson estate and made no request to the Court to recover an asset on the behalf of Watson's estate. Rather, the Watson estate filed a claim to recover an asset on its own behalf. Because S & W did not render services to an entity who would have an allowable expense under § 503(b)(3)(B), it cannot recover its fees under § 503(b)(4). *See Xifaras v. Morad (In re Morad)*, 328 B.R. 264, 270 (1st Cir. BAP 2005) ("[F]or there to be an award of legal fees and costs under § 504(b)(4), there must be a qualifying occurrence under § 503(b)(3).").

**B. Section 503(b)(3)(D)**

■ S & W also seeks an administrative expense pursuant to § 503(b)(3)(D), which provides that:

(b) After notice and a hearing, there shall be allowed administrative ex-

penses, other than claims allowed under section 502(f) of this title, including—
(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title[.]

11 U.S.C. § 503(b)(3)(D). This section is inapplicable to S & W for at least two reasons. First, the subsection applies only in cases under chapter 9 or 11. The Watson case started out as a chapter 11 case, but was converted to chapter 7 on January 7, 2008. All work S & W performed occurred after conversion, and thus is not compensable in the Watson case under § 503(b)(3)(D). *See Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 946 (3d Cir.1994) (holding that "§§ 503(b)(3)(D) and (b)(4) do not authorize fee awards for expenses incurred after a case is converted from one under chapter 11 to one under chapter 7.").

Second, allowance under § 503(b)(3)(D) is limited to certain specified entities: a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders. *See Gorski v. Eisen (In re Henricks Commerce Park, LLC)*, 2006 WL 1667100, at *5 (6th Cir. BAP June 15, 2006) (holding that "before the issues of substantial contribution and reasonableness may be addressed, a movant under § 503(b)(3)(D) and (4) must establish that it is one of the covered entities."), *aff'd*, 313 Fed.Appx. 740 (6th Cir.2007). LSC is not one of these entities. S & W provides no authority, and the Court likewise finds none, that LSC, as debtor in a case related to Wat-

son's case, could qualify for an administrative expense under § 503(b)(3)(D). Because LSC is not entitled to an expense under § 503(b)(3)(D), S & W cannot seek its fees under § 503(b)(4). *See In re Warner Springs P'ship*, 193 B.R. 28, 30 (Bankr.S.D.Cal.1995) (finding co-owners of debtor lacked standing to seek expense for attorney fees under §§ 503(b)(3)(D) and (b)(4) because they were not one of the entities listed in 503(b)(3)(D)); *In re Fortune Natural Res. Corp.*, 366 B.R. 549, 558 (Bankr.E.D.La.2007) (accounting firm representing debtor not entitled to compensation under fees under §§ 503(b)(3)(D) and (b)(4)).

S & W argues it nevertheless should be compensated because they made a substantial contribution in litigating the BIP adversary and bringing in over a million dollars to both estates. However, S & W did so as special counsel to LSC, not the Watson estate. If it believed it was performing substantial, compensable duties on behalf of the Watson estate, as it asserts in its Motion, S & W should have asked Mr. Weinman to employ it as special counsel for the Watson estate pursuant to § 327(e).[2] *E.g., In re Covenant Fin. Group of Am., Inc.*, 243 B.R. 450, 458–64 (Bankr.N.D.Ala.1999) (allowing special counsel to be employed to represent debtor and other plaintiffs) (citing cases). S & W did not do so and it cannot now use § 503(b) as a way to circumvent the requirements of § 327(e). *See In re S. Diversified Prop., Inc.*, 110 B.R. 992, 995 (Bankr.N.D.Ga.1990) ("Courts consistently have held that professionals cannot cir-

cumvent the requirements of 11 U.S.C. § 327(a) by seeking compensation as a general administrative expense under section 503(b)."); *In re Henricks Commerce Park, LLC*, 2006 WL 1667100, at *7 (holding attorney representing debtor "could not bypass the §§ 327 and 330 employment and application process by receiving payment under the § 503(b)(3)(D) and (4) route.").

S & W points out that the six subsections in § 503(b) are a non-exhaustive list of permissible administrative expenses. *See Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1377 (11th Cir.1994) (noting § 503(b)'s use of the word "including" means the listed categories of expenses are not exhaustive). While this may be accurate, S & W has provided no authority to support this Court creating a new category of administrative expense to pay the fees of special counsel appointed in a different case.

▮ Moreover, any discretion this Court might have to permit other types of administrative expenses is limited by the "countervailing doctrine that section 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." *Id.; see also Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988) (holding that administrative expense priority is narrowly construed). When a claim by its nature falls within the general parameters of a subsection of § 503(b), courts generally allow or disallow the expense based upon whether

2. The Court acknowledges that two years after initiation of the BIP adversary, LSC sought to appoint a chapter 11 trustee based on a potential conflict caused by Mr. Weinman acting on behalf of both the Watson estate and LSC in the BIP adversary. That conflict related to the reverse piercing claim asserted by LSC against BIP and its potential negative impact, if successful, on the Watson estate. To the extent S & W believed that this conflict or potential conflict prevented it from in representing both LSC and the Watson estate in the BIP adversary, it should not have been performing legal services for the Watson estate in the first instance.

it meets the requirements of that subsection. A party should not be able to avoid the restrictions of a particular subsection merely by appealing to the non-exclusive nature of § 503(b). *See In re Am. Plumbing & Mech., Inc.,* 323 B.R. 442, 459 n. 23 (Bankr.W.D.Tex.2005) ("An overly expansive use of the term 'including' would render the specific subsections essentially advisory, and would undermine Congress' intent in crafting those specific provisions."). Here, § 503(b)(4) is just such a subsection—it allows a professional not retained under § 327 to recover fees under certain restrictions. As outlined above, S & W does not meet those restrictions, and the Court finds no compelling reason to recognize a new type of administrative expense in order to award S & W additional fees.

## C. Quantum Meruit

 S & W next argues that, if the Court denies it fees under § 503(b), it should award them under quantum meruit. That doctrine is equitable in nature and "seeks to restore fairness when a contract fails," and "strikes the appropriate balance by gauging the equities and ensuring that the party receiving the benefit of the bargain pays a reasonable sum for that benefit." *Dudding v. Norton Frickey & Assocs.,* 11 P.3d 441, 445 (Colo.2000). To recover in quantum meruit, a plaintiff must demonstrate that: (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *Id.*

Many bankruptcy courts have rejected attempts to compensate estate professionals under this equitable doctrine. *E.g., Shapiro Buchman LLP v. Gore Bros. (In re Monument Auto Detail),* 226 B.R. 219, 224–25 (9th Cir. BAP 1998) (quoting *In re Weibel,* 176 B.R. 209, 212 (9th Cir. BAP 1994) ("Compensation to professionals acting on behalf of the estate must be based on provisions of the Code. The Code does not provide for fee awards based on state law theories such as quantum meruit.")); *In re Marshall,* 211 B.R. 662, 666 (Bankr. D.Minn.1997); *In re S. Diversified Prop., Inc.,* 110 B.R. 992, 996 (Bankr.N.D.Ga. 1990).

 Assuming without deciding that the doctrine is applicable in this case, the Court does not find a sufficient equitable basis to award S & W additional fees. S & W knew when it undertook its representation of LSC that there were insufficient funds and an uncertain future ability to pay its usual hourly fees. It then agreed to accept employment on a contingency basis. It has received all that it agreed to receive in compensation. To ask this Court to dip into the funds of another estate, causing the Watson estate's creditors to receive significantly less in their distributions, so that S & W may receive an award that more closely approximates what it would have received if it had been paid according to its usual hourly fees would set a very bad precedent. It would in essence tell counsel who agree to accept a contingency fee that the contingency is only a floor, and not a ceiling on their compensation.

The Court recognizes that the Watson estate ended up getting a larger portion of the settlement proceeds from the BIP adversary, which necessarily lowered LSC's recovery and hence S & W's contingency fee. However, that inequality was due to the Watson estate's 25% ownership interest in BIP, not any inequitable conduct. The agreed-to distribution of settlement proceeds does not demonstrate unjust enrichment, nor S & W's entitlement to a portion of the Watson estate's recovery. Thus, the equities do no support such an application.

## III. CONCLUSION

For the reasons stated above, S & W's Motion For Allowance of Administrative Expense Pursuant to 11 U.S.C. § 503(b) is DENIED.