In re DORADO MARINE, INC., Debtor.

No. 8:04–bk–16765–ALP.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 21, 2005.

David W. Steen, Tampa, FL, for Debtor.

### ORDER ON APPLICATION OF HK ACQUISITIONS, INC. FOR ALLOWANCE OF BREAK–UP FEES AND EXPENSES AND AS AN ADMINISTRATIVE COST

(Doc. No. 382)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 Case, converted from a Chapter 11 case, of Dorado Marine, Inc (the Debtor) is an Application of H.K. Acquisitions, Inc. for Allowance of Break-up Fees and Expenses and as an Administrative Cost (Doc. No. 382), filed by HK Acquisitions, Inc. (HKAI), seeking $50,000 for either an allowance of break-up fees and expenses or, in the alternative, an award of an administrative expense.

The underlying facts relevant to the issue under consideration as appears from the record are without dispute and are as follows.

On August 24, 2004, the Debtor filed its Petition for Relief under Chapter 11. At the time of the commencement of this Case the Debtor was engaged in the business of manufacturing and building custom vessels ranging from flat boats to forty foot sport fishing yachts. The Debtor having failed to obtain confirmation of its Plan of reorganization on May 2, 2005, this Court converted the case to a Chapter 7 case and in due course the office of the U.S. Trustee appointed Shari Jansen as the Trustee for the Estate of the Debtor.

Following the entry of the Order of Conversion, the Debtor in due course ceased all of its manufacturing operations, vacated the premises and left boats that were without hull numbers and in various stages of construction, several vessels. The Trustee did not seek leave to continue to operate the business, pursuant to Section 721 of the Code. The Trustee did not have any funds to continue to maintain and secure the Debtor's facility and protect the assets for an extended period of time.

After the Case was converted to Chapter 7, HKAI, a corporation formed by Dennis Kellough and Brittania Yachts for the purpose of acquiring the assets of the Debtor, commenced negotiations with the Trustee concerning a possible sale of the Debtor's assets. Although there was no contract signed at that time it appears that HKAI commenced its due diligence; specifically, HKAI investigated the public records for judgments, conducted a U.C.C. search, and reviewed court records concerning the Debtor and Debtor-related en-

tities. The due diligence was not limited to the search of the public records but also involved sending inquires to numerous individuals and obtaining documents from third parties in an attempt to discover any claimed interest in and the status of the contracts concerning the uncompleted boats and to determine what liens, if any, encumbered the assets which it sought to purchase. The negotiations culminated with the execution of a contract by the Trustee and HKAI pursuant to which HKAI agreed to purchase substantially all of the assets of the Debtor's Estate.

On June 10, 2005, the Trustee filed an Emergency Motion of Chapter 7 Trustee for Entry of an Order (A) Authorizing the Sale of Real and Personal Property Free and Clear of Liens, Claims, and Encumbrances to HK Acquisitions, Inc. Subject to Higher or Better Offers; (B) Establishing and Approving Bidding Procedures; (C) Approving Notice of Sale; (D) Approving the Assumption of an Assignment of Certain Executory Contracts; (E) Scheduling Hearing to Approve the Bid Procedures; and (F) Scheduling Hearing to Approve Sale (Doc. No. 347). The proposed sale was to HKAI of substantially all of the assets of the estate, free and clear of all liens, claims and interest, with the exception of the lien of Peoples Bank securing the indebtedness of $460,000. The total purchase price fixed by the contract was $500,000.

It was understood the assets would be sold at auction and HKAI would be the stalking horse with its initial bid of $500,000, subject to higher and better offers. HKAI agreed to participate in the auction and make the initial bid provided that it had certain bidder protections, including overbid protection, minimum bid increments, and a breakup fee of $50,000 in the event it was not the successful bidder.

By an Order entered June 24, 2005 (Doc. No. 367) (the June 24 Order), this Court approved the Sale Motion with several modifications, including reducing the overbid from $575,000 to $510,000, with minimal bid increments of $10,000. This Court specifically deferred consideration of the breakup fees sought by HKAI.

The proposed sale went through several modifications, due in part to a number of objections to the sale and claims to ownership of several of the Debtor's assets. The final steps of the sale proceedings occurred on June 10, 2005, when this Court entered a Final Order Approving Sale of Real and Personal Property of the Estate, to a second bidder, Dorado Holdings, LLC, for the purchase price of $210,000 (Doc No. 387).

As HKAI was not the successful bidder, it filed the instant Motion seeking payment of $50,000, as either the breakup fee outlined in the Sale Motion, or alternatively as payment of an administrative expense.

■ A breakup fee is a "fee paid by a seller to a prospective purchaser in the event that a contemplated transaction is not consummated." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 528 (3d Cir.1999). The fee is intended to compensate the bidder for the time, effort, and risk of being the stalking horse, and to encourage the bidder to do the necessary due diligence with the assurance that its efforts will be compensated if it is unsuccessful. *Id.* at 535. In a normal case, a debtor and a prospective bidder agree on certain bid procedures, including a breakup fee if the parties feel it is necessary, and present the court with a motion requesting approval of those procedures. If the court approves the fee, then if the conditions precedent are met and the bidder is unsuccessful, the fee is paid.

The deviation in this case is that this Court never entered an order approving the breakup fee. The June 24 Order specifically states that this Court deferred consideration on the breakup fee issue. It is undisputed that HKAI was not the successful bidder; if this Court had approved the breakup fee, HKAI would be entitled to the $50,000 fee. As the fee was not previously approved, this Court is not bound by the provisions of the original sale motion as it relates to the breakup fee.

HKAI requests relief in the alternative, seeking an award of breakup fees or an administrative expense. This Court first notes that HKAI is not entitled to an administrative expense under 11 U.S.C. § 503(b)(3)(D). The Code provides for payment as an administrative expense for the (1) actual and necessary expenses, (2) incurred by a creditor, (3) in making a substantial contribution, (4) in a case under chapter 11. 11 U.S.C. § 503(b)(3)(D).

■ Even assuming that $50,000 of the expenses incurred by HKAI were a substantial contribution, an award under this subsection is improper. First, there is no evidence in the record that HKAI is a creditor in this case. While the principles of HKAI, Dennis Kellough and Brittania Yachts, are creditors, the entity they formed to acquire the assets of the Debtor, that entered into the initial agreement with the Trustee, and that seeks payment of an administration expense, is not a creditor.

Second, the expenses at issue were incurred after the case was converted to chapter 7. The plain language of the statute provides for payment of expenses incurred in contributing to a case "under chapter 9 or 11 of this title." § 503(b)(3)(D). "Section 503(b)(3)(D) does not authorize fee awards for expenses after a case is converted from Chapter 11 to Chapter 7." *In re Alumni Hotel Corp.,* 203

B.R. 624, 631 (Bankr.E.D.Mich.1996). HKAI admits in its Application that the sale discussions in this case occurred post-conversion, between the Trustee and HKAI, not between a debtor-in-possession. Application for Break-up Fees, Doc. No. 382, p. 2 ("*Following the conversion,* HKAI commenced negotiations with the Trustee concerning a possible sale of the assets of the Debtor.") (emphasis added). Based on the foregoing, HKAI is not entitled to an award and payment of an administrative expense.

■ In past cases, this Court has denied lump sum break-up fee requests, but allowed reimbursement to the extent the expenses are actual and necessary, and provide a benefit to the estate. See, NAMPA. The same treatment is appropriate in this case. The $50,000 break-up fee requested in the initial Sale Motion is denied, but HKAI may be reimbursed for costs that: (1) are actual and necessary costs incurred for the preservation of the Debtor's estate within the meaning of 11 U.S.C. § 503(b); (2) provide a substantial benefit to the Debtor's estate; and (3) are reasonable and appropriate in light of the size and nature of the proposed sale and the efforts expended by HKAI.

While HKAI states that its actual costs totaled $57,11.00 in attorneys' fees and $2,126.80 in costs, it is seeking only $50,000. HKAI submitted detailed documentation for the fees it incurred, attaching time records broken down into categories to its Application.

Based on the record, this Court is satisfied that HKAI provided a substantial benefit to the Estate. HKAI was the stalking horse. At the time when the Case was converted to Chapter 7 and HKAI and the Trustee began negotiations, the documents and records of the Debtor were in disarray, and the assets and claims encumber-

ing those assets were uncertain. This was not a case in which a debtor or a trustee gathered the information necessary to perform the due diligence in anticipation of the sale, *see O'Brien*, 181 F.3d at 537; rather, the efforts of HKAI placed the assets of the Debtor in a posture such that other bids were attracted. *See In re Diamonds Plus, Inc.*, 233 B.R. 829 (Bankr. E.D.Ark.1999) (concluding that unsuccessful bidder provided benefit to the estate by helping to coordinate sale.)

Additionally, HKAI served as a catalyst for higher bids. The eventual highest and best bid exceeded HKAI's bid by the minimum amount required by the sale procedures, and was made contingent upon HKAI remaining in the bidding, and so clearly relied upon HKAI's valuation and efforts. The expenses incurred by HKAI provided a substantial benefit to the Estate by insuring an adequate bid.

█ The expenses incurred by HKAI that are allowable are those relating to the due diligence that a bidder had to conduct, as well as those required to prepare the assets for sale. These expenses guaranteed that the assets would be sold for a fair price, and provided a substantial benefit to the Estate. Based on the foregoing, this Court is satisfied that HKAI incurred actual and necessary costs incurred for the preservation of the Debtor's estate, which provided a substantial benefit to the Debtor's estate.

█ However, only some of the expenses incurred by HKAI provided benefits to the Estate. Significant portions of the expenses generated were types of services that are within the purview of the legal services performed by counsel for the Trustee, not a bidder, services that should have been performed by the Trustee and as such provided no benefit to the estate. Particularly, HKAI seeks reimbursement for $5,825.00 for fees generated in attend-

ing hearings and meetings of creditors, and $13,350.00 in drafting the contract, bidding procedures and the motion to approve the contract. These actions, when performed by the bidder, produced no benefit to the estate. The amount of expenses for these services, $19,175.00, will be subtracted from the amount requested, leaving an allowed administrative claim of $30,825.00

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application of H.K. Acquisitions, Inc. for Allowance of Break-up Fees and Expenses and as an Administrative Cost be, and the same is hereby, approved in part. It is further

ORDERED, ADJUDGED AND DECREED that H.K. Acquisitions, Inc. be, and is hereby, allowed an administrative expense in the amount of $30,825.00.