RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: CONNOLLY NORTH AMERICA, LLC,

*Debtor.*

_____

MEDIOFACTORING; COFACE ARGENTINA,

*Plaintiffs-Appellants,*

*v.*

DANIEL M. MCDERMOTT, United States Trustee,

*Defendant-Appellee.*

No. 13-2489

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-14891—Gerald E. Rosen, Chief District Judge.

Argued: June 26, 2014

Decided and Filed: September 21, 2015

Before WHITE, DONALD, and O'MALLEY,[*] Circuit Judges.

_____

## COUNSEL

**ARGUED:** William M. Hannay, SCHIFF HARDIN, Chicago, Illinois, for Amicus Curiae. Marc N. Swanson, MILLER, CANFIELD, PADDOCK & STONE, PLC, Detroit, Michigan, for Appellants. Cameron M. Gulden, UNITED STATES DEPARTMENT OF JUSTICE, Chicago, Illinois, for Appellee. **ON BRIEF:** William M. Hannay, SCHIFF HARDIN, Chicago, Illinois, for Amicus Curiae. Marc N. Swanson, Michael H. Traison, Ronald A. Spinner, MILLER, CANFIELD, PADDOCK & STONE, PLC, Detroit, Michigan, for Appellants. Cameron M. Gulden, Sean Cowley, UNITED STATES DEPARTMENT OF JUSTICE, Chicago, Illinois, for Appellee.

_____

[*]The Honorable Kathleen M. O'Malley, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

1

DONALD, J., delivered the opinion of the court in which WHITE, J., joined. O'MALLEY, J. (pp. 13–20), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

BERNICE BOUIE DONALD, Circuit Judge.   In a case under Chapter 7 of the Bankruptcy Code,[1] three unsecured creditors successfully removed the bankruptcy trustee for misfeasance.   The successor trustee then commenced an adversary proceeding against his predecessor, reaching a settlement that significantly increased the amount of funds available for the § 541(a) bankruptcy estate and its creditors.   Despite determining that they had contributed substantially to achieving the settlement, the United States Bankruptcy Court for the Eastern District of Michigan denied the subsequent application of two creditors, Mediofactoring and Coface Argentina (collectively, "Coface"), for reimbursement of administrative expenses.[2] According to the court, 11 U.S.C. § 503(b), which governs the allowance of administrative expenses, does not authorize such reimbursement in a Chapter 7 case.

The United States District Court for the Eastern District of Michigan affirmed the bankruptcy court's conclusion, and Coface now appeals to this Court, supported by the successor trustee as *amicus curiae*.   For the reasons that follow, we REVERSE the district court's judgment and hold that administrative expenses are allowable in these circumstances under § 503(b) in a Chapter 7 case.

I.

A Chapter 7 petition was filed against Connolly North America, LLC ("Connolly") in the Bankruptcy Court in 2001.[3]   *See In re Connolly N. Am.*, 376 B.R. 161, 164 (Bankr. E.D. Mich. 2007).   In 2005, Mark H. Shapiro ("Shapiro"), who was then the bankruptcy trustee, initiated an adversary proceeding.   *Id.* at 165.   In 2007, the bankruptcy court concluded that Shapiro and his

———————————

[1]"Bankruptcy Code" refers to Title 11 of the United States Code.

[2]The third creditor did not join in the application and is not a party to this appeal.

attorney had breached their discovery obligations due to gross negligence.  *Id.* at 164-65.  The court therefore dismissed Shapiro's claims with prejudice.  *Id.* at 165.

Three of Connolly's unsecured creditors, among them Coface, subsequently filed a motion to remove Shapiro from the position of bankruptcy trustee.  *See In re Connolly N. Am.*, 479 B.R. 719, 721 (Bankr. E.D. Mich. 2012).  They prevailed, and Bruce Comly French ("French"), Shapiro's successor, then commenced an adversary proceeding against Shapiro, his law firm, and his professional-liability insurer for damages.  The parties reached a court-approved settlement in 2012, and the bankruptcy court recognized "that at least some of the work that Coface paid its attorneys to do in this case substantially benefitted the bankruptcy estate and the unsecured creditors, and contributed greatly to there being a significant increase [in] the amount of funds that the unsecured creditors w[ould] receive."  *In re Connolly N. Am.*, 479 B.R. at 722.

Consequently, Coface applied for reimbursement of $164,336.28 in attorney fees and costs "under the general authority to allow 'administrative expenses' . . . in the opening clause of [11 U.S.C.] § 503(b)."[4]  *Id.* at 720.  The U.S. trustee opposed Coface's application, and the bankruptcy court denied it, concluding that § 503(b) does not authorize the requested reimbursement.  *In re Connolly N. Am.*, 479 B.R. at 723.  As the bankruptcy court saw the matter, Congress's failure to extend § 503(b)'s express provision for reimbursement for a creditor that makes "a substantial contribution in a case under chapter 9 or 11 [of the Bankruptcy Code]," § 503(b)(3)(D), to a creditor making such a contribution in a case under Chapter 7 reflected "a Congressional intent" to deny reimbursement in Chapter 7 cases.[5]  *In re Connolly N. Am.*, 479 B.R. at 723.

---

[3]The Bankruptcy Code provides for five different kinds of bankruptcy cases.  One of these arises under Chapter 7, which enables individuals to discharge certain debts that they cannot afford in exchange for surrendering certain non-exempt assets.  *See* 11 U.S.C. § 701, *et seq.* Chapter 7 only applies to individuals (or proprietorships); it does not apply to corporations, partnerships, LLCs, or other legal entities.  11 U.S.C. § 727(a).

[4]Section 503(a) authorizes such applications.

[5]*See supra* note 3.  Chapter 9 provides for municipal reorganizations, *see* 11 U.S.C. § 901, *et seq.*, and Chapter 11 allows for reorganizations and liquidations of corporations, partnerships, LLCs, and individuals, *see id.* § 1101, *et seq.*

Coface then appealed to the district court, which agreed with the bankruptcy court. According to the district court, Coface's "proposed reading of § 503(b) . . . runs afoul of the 'well-established canon of statutory interpretation' that 'the specific governs the general.'" *In re Connolly N. Am.*, 498 B.R. 772, 775 (E.D. Mich. Sept. 30, 2013) (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012)). Additionally, the district court explained, "[t]he authority to address any inequities which may be present in the application of the plain meaning rule to § 503(b) is vested in Congress, not the courts." *Id.* at *12 (quotation omitted) (alteration in original).

This timely appeal followed, and we allowed French to participate in the appeal as *amicus curiae* in support of Coface.

II.

A.

When we consider an appeal that originated in bankruptcy court, "our review process is slightly different from our normal standard of review[.]" *Barlow v. M.J. Waterman & Assocs.* (*In re M.J. Waterman & Assocs.*), 227 F.3d 604, 607 (6th Cir. 2000). "[W]e directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision," *id.*, recognizing that we are "in as good a position to review the bankruptcy court's decision as is the district court," *XL / Datacomp v. Wilson* (*In re Omegas Group*), 16 F.3d 1443, 1447 (6th Cir. 1994) (citation and internal quotation marks omitted). We examine the bankruptcy court's findings of fact for clear error and consider its conclusions of law de novo. *Zingale v. Rabin* (*In re Singale*), 693 F.3d 704, 707 (6th Cir. 2012) (citing *Chase Manhattan Mortg. Corp. v. Shapiro* (*In re Lee*), 530 F.3d 458, 463 (6th Cir. 2008)). At issue in this appeal is a single conclusion of law: the bankruptcy court's statutory construction of § 503(b)(3)(D) as a per-se bar to reimbursement of the instant administrative expenses under § 503(b) in this Chapter 7 proceeding. We therefore apply the de novo standard of review.

B.

We begin with principles. The first is the "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction[,]" highlighted by the Supreme Court in

*Bank of Marin v. England*, 385 U.S. 99, 103 (1966); *see also Green v. Green (In re Green)*, 986 F.2d 145, 150 (6th Cir. 1993). Bankruptcy courts are thus "specialized court[s] of equity." *Curtis v. Loether*, 415 U.S. 189, 195 (1974). And although their equitable powers "are not unlimited," their decisions are unimpeachable so long as these powers are "'exercised within the confines of the Bankruptcy Code.'" *Architectural Bldg. Components v. McClarty (In re Foremost Mfg. Co.)*, 137 F.3d 919, 924 (6th Cir. 1998) (quoting *In re Omegas Group*, 16 F.3d at 1453).

The second principle is that statutory language is the keystone on which all other analysis relies. Thus, "[t]he task of resolving the dispute over the meaning of [the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). If the language is clear, we need not look further because Congress "says in a statute what it means and means in a statute what is says." *Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A.*, 530 U.S. 1, 6 (2000); *see also Ron Pair*, 489 U.S. at 241. Consequently, we have checked the bankruptcy court's exercise of its equitable powers where that exercise contradicts the plain, unambiguous meaning of the Bankruptcy Code. *See, e.g., In re Foremost Mfg. Co.*, 137 F.3d at 923 ("We prefer this 'plain meaning' approach for the simple reason that [the provision of the Bankruptcy Code in question] is unambiguous.").

With these key principles in mind, we turn to the case at bar. Where, as here, reimbursement of administrative expenses properly follows from the totality of the pertinent facts, interpretation of the statutory language, and relevant equitable considerations, we hold that § 503(b) allows for reimbursement in Chapter 7 cases.

## C.

The text of the Bankruptcy Code supports this view. Section 503(b) states that administrative expenses may be awarded regarding nine categories of claims that it expressly deems reimbursable. One such category, set out in § 503(b)(3)(D), authorizes reimbursement for creditors who have made "substantial contribution[s]" in cases under Chapters 9 and 11 of the Bankruptcy Code. However, there is no similar express statutory provision for creditors in Chapter 7 cases:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

>> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D) (emphasis added).

There is general agreement among the parties and courts that § 503(b) would allow for reimbursement in the present case were it not for Congress's supposed signaling of a contrary intent in § 503(b)(3)(D). *See, e.g., In re Connolly N. Am.*, 479 B.R. at 723 ("[T]he Court concludes that no administrative expense may be allowed, based on the opening clause of § 503(b), for a creditor's substantial contribution in a Chapter 7 case [because] the provision in § 503(b)(3)(D), expressly allowing an administrative expense for a creditor who makes a substantial contribution in a Chapter 9 or Chapter 11 case, but not extending that to a Chapter 7 case, shows a Congressional intent not to extend administrative expense treatment to such a creditor in a Chapter 7 case.") (emphasis in original). The question, therefore, is whether the inclusion of the "substantial contribution in a case *under chapter 9 and 11*" language in subsection (b)(3)(D) negates the meaning of "including" in the introductory provision of § 503(b) and divests bankruptcy courts of the authority to allow reimbursement of administrative expenses incurred by a Chapter 7 creditor who makes a substantial contribution to the debtor's estate. The bankruptcy court answered this question in the affirmative, holding that Coface's claim for reimbursement must fail because it arises out of a Chapter 7 case.

But the plain language of the Act does not compel this conclusion. Nowhere does the Act say, "expenses incurred by a creditor in securing the removal of a Chapter 7 trustee are not allowable"; or, "expenses incurred in making a substantial contribution in a case under Chapters 9 or 11, but not Chapter 7, may be allowed"; or, "only the enumerated expenses shall be allowed." Thus, courts addressing this issue, including the bankruptcy court and district court in the present case, must rely on established canons of statutory construction to interpret § 503(b).

D.

Our jurisprudence instructs that claims for expenses under § 503(b) be strictly construed because they "reduce the funds available for creditors and other claimants." *City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 1000 (6th Cir. 2001) (citation omitted). There is, however, broad consensus that the categories listed in the statute are not exhaustive. *See, e.g.*, *In re Al Copeland Enters.*, 991 F.2d 233, 239 (5th Cir. 1993); *United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1106 (9th Cir. 1989); *In re T.A. Brinkoetter & Sons, Inc.*, 467 B.R. 668, 670 (Bankr. C.D. Ill. 2012); *Pergament v. Maghazeh Family Trust (In re Maghazeh)*, 315 B.R. 650, 654 (Bankr. E.D.N.Y. 2004).

We have noted previously that the Bankruptcy Code itself encourages an expansive reading of § 503(b). The statute explains in § 102(3) that the terms "'includes' and 'including' are not limiting[.]" *See United States v. Flo-Lizer, Inc. (In re Flo-Lizer, Inc.)*, 916 F.2d 363, 365 (6th Cir. 1990). Consequently, we held that Congress's failure to expressly designate a given expense as allowable under § 503(b) does not mean that it is excluded. *See In re Flo-Lizer, Inc.*, 916 F.2d at 365 ("[T]he failure of Congress to expressly list interest as an administrative expense [in a subsection of § 503(b)] does not mean that it cannot be an administrative expense."); *In re George Worthington Co.*, 921 F.2d 626, 634 (6th Cir. 1990) ("Although we fail to find express authority for the reimbursement of an official committee's administrative expenses in the Code, we believe it is implied in the overall scheme for reorganization and in the legislative history of the Code and its amendments.").

On the contrary, by using the term "including" in the opening lines of the subsection, Congress built a mechanism into § 503(b) for bankruptcy courts to reimburse expenses not specifically mentioned in § 503(b)'s subsections. The insertion of the term indicates that Congress did not intend to provide an exhaustive list of allowable expenses. Rather, it appears that Congress anticipated that bankruptcy courts would encounter a variety of administrative expenses and circumstances warranting reimbursement, which it could then evaluate on a case-by-case basis depending on the specific facts of the case, the benefit conferred upon the bankruptcy estate and its creditors, and whether the expenses at issue were actual, necessary, and reasonable.

To be sure, the examples in the subsections of § 503(b) are not meaningless. They provide a contextual framework, describing obligations of the bankruptcy estate, such as wages and taxes, and situations where the trustee, creditors, creditor committees, and others administer, preserve, or augment the estate. Congress intended to provide guidance, and in doing so, it set forth the more common administrative expenses intended to be allowed. It makes good sense that in providing these examples, Congress would expressly mention Chapters 9 and 11 in the context of creditor activity making a "substantial contribution," but not Chapter 7. In both Chapters 9 and 11, as a matter of course, a creditor will spend its own time and resources to benefit the estate; however, in all but the most atypical Chapter 7 case (such as the instant case), the U.S. trustee fulfills this role. *See* H.R. Rep. No. 95-595 at 88 (1978) (*reprinted in* 1978 U.S.C.C.A.N. at 5787, 5963, 6049) (stating that the primary role of the U.S. trustees is to serve as the "bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena").

The U.S. trustee is tasked with, among other things, "monitoring the progress of cases under [the Bankruptcy Code] and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress." 28 U.S.C. § 586(a)(3)(G). If the U.S. trustee determines that the acting trustee failed "to safeguard or to account for estate funds and assets," or believes that the acting trustee has delivered "[s]ubstandard performance of general duties and case management," the U.S. trustee may remove the acting trustee. 28 C.F.R. § 58.6(a)(1), (4). And if the U.S. trustee does not see cause to remove the acting trustee, a creditor typically must only file a motion with the bankruptcy court to have the acting trustee's conduct reviewed. *See* 11 U.S.C. § 324 (providing the bankruptcy court with authority to remove an acting trustee). Such a motion alerts the U.S. trustee of the issue and, in theory, prompts an investigation. Thus, in a properly administered case under Chapter 7, a creditor will not be in a position to "substantially contribute" to the estate by pursuing the acting trustee's removal and prosecuting a claim on behalf of the estate.

As this case demonstrates, however, the U.S. trustee is not a fail-proof safeguard, and in certain circumstances, a Chapter 7 creditor may be compelled to utilize its own resources to

protect the estate as a whole.[6]  It is worth noting that, had the U.S. trustee fulfilled its duty as the "bankruptcy watch-dog" here, there is no question that the estate would have paid the expenses associated with removing the former trustee and prosecuting the malpractice action.  *See* 11 U.S.C. §§ 326, 330.  Thus, the construction favored by the bankruptcy court, the U.S. trustee, and the dissent results in the disallowance of an administrative expense that would have been allowed had the bankruptcy proceeded as intended by the Bankruptcy Code.

E.

The U.S. trustee, the bankruptcy court, and the dissent conclude that the clear language of inclusion is trumped by implication, relying on the precept *expressio unius est exclusio alterius* ("the expression of one thing excludes others") and the Supreme Court's endorsement of the "'well-established canon . . . of statutory construction that the specific governs the general'" in *RadLAX*, 132 S. Ct. at 2070-71 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).  They reason that a specific subsection of the Bankruptcy Code—like § 503(b)(3)(D)'s express authorization for administrative expenses in cases under Chapters 9 and 11—"[cannot] be ignored by relying on a general subsection" like § 503(b)'s prefatory decree that "there shall be allowed administrative expenses."  But nothing about our interpretation ignores the mandate in § 503(b)(3)(D).  If anything, our approach reflects a more comprehensive understanding of the general/specific canon and its implications in this context.

First, although *RadLAX* extolled the virtues of the general/specific canon, that case concerned § 1129(b)(2)(A) of the Code, not § 503(b).  *See* 132 S. Ct. at 2068.  Neither the term "include"—nor any variation thereof—is to be found in § 1129(b)(2)(A).  Accordingly, applying the Supreme Court's reasoning in *RadLAX* to this case would disturb yet another "'cardinal principle of statutory construction,'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)):  that, whenever possible, a statute should be

---

[6]In this case, it appears that the unsecured creditors, acting trustee, and bankruptcy court all agree that Coface's role in removing the former trustee and prosecution of the malpractice suit substantially benefitted the estate.  *See In re Connolly N. Am., LLC*, 498 B.R. at 773–76.  Further, it does not appear that any of these parties objected to Coface's motion for administrative expenses, and the U.S. trustee only takes issue with the motion because of § 503(b)(3)(D)'s language purporting to limit reimbursement for "substantial contributions" to Chapters 9 and 11.  Accordingly, without the language of § 503(b)(3)(D), it appears that Coface's reimbursement would have been authorized without objection.  This does not resolve the issue before us, but it strongly suggests that Coface's actions are the type of conduct befitting reimbursement as an administrative expense.

construed so that "'no clause, sentence, or word shall be superfluous, void, or insignificant,'" *id.* Congress deliberately inserted "including" into the text of § 503(b) and expressly instructed, in § 102(3), that the term "[is] not limiting[.]"

Second, Congress was fully capable of stating that § 503(b) *excludes* reimbursement in Chapter 7 cases if that is what it actually intended the statute to do. *Cf. United States v. Murphy*, 241 F.3d 447, 456 (6th Cir. 2001) (quoting *United States v. Fuller*, 86 F.3d 105, 106 (7th Cir. 1996) and *United States v. Miranda*, 986 F.2d 1283, 1284 (9th Cir. 1993)) (noting that Congress did not restrict the "'limitless delay provision'" of one statute with the time limits of another "'[a]lthough it was certainly capable of doing so'"). It did not. "'We refuse, therefore, to find a limitation where Congress did not expressly create one.'" *Id.* (quoting *Miranda*, 986 F.2d at 1284).

F.

Without doubt, balancing policy concerns in the bankruptcy arena is entrusted to Congress. Our job as a court is simply to respect the intended meaning of the Bankruptcy Code and enforce that meaning, leaving Congress to assess the outcome. But in discerning that intended meaning, we properly look to the overall intent and purpose of the Code. Failing to award administrative expenses to the rare Chapter 7 creditors who are forced by circumstances to "tak[e] action that benefits the [bankruptcy] estate when no other party is willing or able to do so," would deter them from participating in bankruptcy cases and proceedings, which is plainly inconsistent with the purposes of the Act. This militates in favor of interpreting § 503(b) to embrace reimbursement of administrative expenses in cases such as this one and § 503(b)(3)(D) as not divesting the bankruptcy courts of the authority to do so.

The U.S. trustee insists that Coface already has "reaped benefits" from participating in Connolly's Chapter 7 cases. "As the creditor holding roughly 50% of the amount of the unsecured claims," the U.S. trustee observes, "Coface will receive roughly 50% of the net increase in distributions that are paid to unsecured creditors because of [its] work." This is true, but it is true of other allowable expenses, as well. And while it is also true that the size of Coface's claim was sufficient to prompt it to undertake the effort, this view discounts the uncertainty involved. Coface had no way of knowing when it undertook to remove Shapiro from

the position of bankruptcy trustee that it ultimately would be successful; nor could it foresee that French's subsequent adversary action against Shapiro would result in valuable and meaningful net gains to the bankruptcy estate. A creditor with a lesser claim may have simply walked away and declined to take actions that benefited the estate as a whole. Further, although Coface recovered a substantial portion of the settlement it made possible, it will nonetheless pay a share of any administrative expense allowed because that expense will reduce the amount distributed to all of the unsecured creditors pro rata.

Denying creditors reimbursement of administrative expenses in such circumstances not only would disincentivize participation in the bankruptcy process, it also would impugn the fundamental notion of bankruptcy as equitable relief.[7] As neither Congress nor case law compels such a result, we will not dictate it under the circumstances of this case. Instead, we hold that § 503(b)(3)(D) of the Bankruptcy Code does not divest bankruptcy courts of authority to allow reimbursement under § 503(b) of reasonable administrative expenses of creditors whose efforts substantially benefit the bankruptcy estate and its creditors in a Chapter 7 proceeding.[8]

---

[7]*See supra* pp. 4-5.

[8]To be sure, and as the dissent points out, this interpretation is contrary to holdings of the Third Circuit and the cases relying on its reasoning. *See Lebron v. Mechum Fin. Inc.*, 27 F.3d 937, 945 (3d Cir. 1994) ("There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that [such] expenses were intended to be reimbursable under those provisions or not at all."). We are also aware that, when analyzing a claim for derivative standing, we have stated in dictum that:

> [T]here is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts [for derivative standing]. Section 503(b)(3)(B) . . . applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of § 503(b)(3) to Chapters 9 and 11. *See* § 503(b)(3)(D).

*In re Trailer Source, Inc.*, 555 F.3d 231, 243 (6th Cir. 2009). We conclude, however, that these cases are wrongly decided.

III.

For these reasons, we REVERSE the judgment of the District Court and REMAND for consideration of the merits of Coface's request.**9**

---

**9**We note, for purposes of clarity, that unlike a properly filed and executed pre-petition proof of claim, *see* Fed. R. Bankr. 3002, applications for reimbursement of administrative expenses under § 503(b)—for which § 503(a) provides—do not constitute prima facie evidence of the validity and amount of the administrative expenses at issue. However, the bankruptcy court expressly concluded "that at least some of the work that Coface paid its attorneys to do in this case substantially benefitted the bankruptcy estate and the unsecured creditors, and contributed greatly to there being a significant increase [in] the amount of funds." *In re Connolly N. Am.*, 479 B.R. at 722. We leave it to the bankruptcy court to evaluate the request in the first instance as it would any request under § 503(b).

—————————————

**DISSENT**

—————————————

KATHLEEN M. O'MALLEY, Circuit Judge, dissenting.  The question presented in this appeal is a purely legal one:  does § 503(b) of the Bankruptcy Act of 1978 ("Bankruptcy Code") authorize a bankruptcy court to reimburse a creditor for costs incurred in providing a "substantial contribution" to the administration of a bankruptcy estate and to classify that reimbursement as an administrative expense?  The bankruptcy court that considered Coface's request for such a reimbursement decided that the answer was no.  On appeal, the district court agreed with that conclusion.  The majority reverses, concluding that § 503(b), though not expressly authorizing the payments at issue, does not "check" a bankruptcy court's equitable power to authorize the administrative expense Coface requested.  I respectfully disagree.  For the reasons stated by the district court, and those set forth below, I would affirm the bankruptcy court's decision.

I.

I agree that bankruptcy courts are courts of equity and that equitable principles, therefore, govern the exercise of bankruptcy jurisdiction.  But, as the majority recognizes, the equitable nature of a bankruptcy proceeding does not untether a bankruptcy court from the strictures of the Bankruptcy Code itself.  Indeed, the Supreme Court has made clear that the equitable power of a bankruptcy court "can only be exercised within the confines of" the Bankruptcy Code."  *Law v. Siegel*, 134 S. Ct. 1188, 1194–95 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)); *see also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24–25 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law . . . but are limited to what the Bankruptcy Code itself provides.").  This court has also recognized that, "although the bankruptcy court has broad equitable powers under 11 U.S.C. § 105(a), those powers are not unlimited."  *In re Foremost Mfg. Co.*, 137 F.3d 919, 924 (6th Cir. 1998).  We must, accordingly, begin with the terms of the statute to determine whether Congress has confined the reach of the bankruptcy court's equitable powers in § 503(b).

Section 503(b) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

. . .

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . .
>
> > (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

This court has made clear that "[c]laims for administrative expenses under § 503(b) are [to be] strictly construed because priority claims reduce the funds available for creditors and other claimants." *In re Federated Dep't Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001); *see also In re United Educ. & Software*, No. CC-05-1067-MaMeP, 2005 WL 6960237, at \*4 (B.A.P. 9th Cir. Oct. 7, 2005) ("Section 503(b) has been construed narrowly because administrative claims are paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants."). Rather than strictly construe § 503(b), however, the majority gives it a sweeping reach. It concludes that the use of the term "including" in § 503(b) allows bankruptcy courts to classify substantial contribution expenses by a creditor in a Chapter 7 proceeding as an administrative expense. It reaches this conclusion, moreover, despite the explicitly narrower language in § 503(b)(3)(D)—expressly authorizing reimbursements in proceedings under Chapters 9 and 11, but not mentioning Chapter 7. The majority believes that § 503(b)(3)(D) would only limit a court's ability to award substantial contribution administrative expenses in Chapter 7 proceedings (and presumably Chapters 12 and 13 proceedings) if the subsection had read "under Chapters 9 and 11 of this title, *but not under Chapters 7, 12, and 13 thereof.*"

Although it is true that Congress could have explicitly stated that § 503(b) excludes substantial contribution claims in Chapter 7, it remains just as true that Congress only specified that substantial contribution claims can be considered administrative expenses under Chapters 9 and 11. Generally, Congress "says in a statute what it means and means in a statute what is says there." *Hartford Underwriters Ins. Co. v. Union Planters Banks, N.A.*, 530 U.S. 1, 6

(2000); *see also In re Hackney*, 351 B.R. 179, 201 (Bankr. N.D. Ala. 2006) ("Congress knew how to create a 'substantial contribution' administrative expense for cases it believed were appropriate for that benefit. It did that in section 503(b)(3)(D) for Chapter 9 and Chapter 11 cases. It could have done the same in Chapter 7 cases. It did not."). Further, while Congress chose to use "including" in § 503(b), Congress did not use "including" in § 503(b)(3), implying that the list of "actual, necessary expenses" covered by that provision is exclusive. That Congress used "including" language in some provisions of the Bankruptcy Code, but not others, is meaningful. For example, Congress used "including" for the list of "actual, necessary costs and expenses of preserving the estate" in § 503(b)(1)(A), but conspicuously chose not to include similar language in § 503(b)(3).

The majority's construction of § 503(b) would also read § 503(b)(3)(D) out of the statute, violating a fundamental canon of statutory construction. *See, e.g.*, *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (stating that "[o]ur cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment" (quoting *Penn. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990))). Under the majority's interpretation of § 503(b), § 503(b)(3)(D) would be superfluous. If substantial contributions in a Chapter 7 proceeding can be considered an administrative expense under the broad "including" provision of § 503(b), then there is no reason why substantial contributions in Chapter 9 and 11 proceedings could not also have been considered administrative expenses under that same language, making § 503(b)(3)(D) unnecessary. The majority fails to explain the purpose of § 503(b)(3)(D) under its interpretation of the statutory scheme.

The majority also claims that Congress did not include Chapter 7 in § 503(b)(3)(D) because it is only the rare case where a creditor would need to step in to benefit the estate in Chapter 7 proceedings because the Trustee normally fulfills that role. Maj. Op. at 9. This explanation seems to support the notion that Congress consciously chose to exclude Chapter 7 from § 503(b)(3)(D), however; if Congress felt substantial contribution reimbursements were not needed in Chapter 7 cases we must respect that conclusion. Indeed, what little legislative history there is regarding § 503(b)(3)(D) indicates that Congress intended its scope to be limited. Senate

Bill 236, one of the earliest versions of the Bankruptcy Act, provided that an administrative claim "shall be allowed" for "compensation for services, representing a substantial contribution" or an "expense, representing a substantial contribution" in Chapter 9 and 11 proceedings.[1] S. 236, 94th Cong. § 4–403(a)(8),(9) (1975). House Bill 6, adopting the modern structure of § 503(b), continued to describe substantial contributions as administrative expenses in Chapters 9 and 11, but not Chapter 7. H.R. 6, 95th Cong. (1977). Later bills in the House, such as H.R. 8200, 95th Cong. (1978), and H.R. 7330, 95th Cong. (1977), and Senate, such as S. 2266, 95th Cong. (1978) (amended), and S. 2266, 95th Cong. (1977), continued to provide for substantial contributions as administrative expenses for only Chapter 9 and 11 proceedings. And, unlike in *In re Mark Anthony*, 886 F.2d 1101 (9th Cir. 1989), or *In re Flo-lizer, Inc.*, 916 F.2d 363 (6th Cir. 1990), upon which the majority relies, where Congress legislated against a background common law rule providing for a particular type of administrative expense, neither Coface nor the majority places the legislative history of § 503(b)(3)(D) in that same context. While the House and Senate reports and hearings are silent on § 503(b)(3)(D), and Congressional silence often has little interpretative value, *Helvering v. Hallock*, 309 U.S. 106, 121 (1940) ("[W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle"), Congress's decision to explicitly *include* Chapters 9 and 11 in § 503(b), while *not including* Chapter 7 in even the earliest drafts of the Bankruptcy Act, further persuades me that Congress did not intend for § 503(b) to cover substantial contributions in Chapter 7 proceedings. That Congress may not have foreseen the unusual circumstances at issue here does not give us the freedom to rewrite the statute in order to take account of them and reach an "equitable" solution.

Indeed, other courts, including at least one panel from this court, that have considered the issue seem to agree that § 503(b)(3)(D) excludes Chapter 7 proceedings. Our court, in *In re Trailer Source, Inc.*, 555 F.3d 231 (6th Cir. 2009) (analyzing the scope of § 503(b)(3)(B)), stated that:

---

[1]Of note, § 4–403(a)(8) referred to substantial contributions for a "chapter VII case" while § 4–403(a)(9) referred to substantial contributions for a "chapter VIII case." Chapter VII, titled "Reorganizations", and Chapter VIII, titled "Adjustment of Debts of Public Agencies and Instrumentalities and Political Subdivisions," would become Chapters 11 and 9, respectively, in later bills. *See, e.g.*, S. 2266, 95th Cong. (1978); H.R. 7330, 95th Cong. (1977).

> [T]here is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts [for § 503(b)(3)(B)]. Section 503(b)(3)(B) . . . applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of § 503(b)(3) to Chapters 9 and 11. *See* § 503(b)(3)(D) . . . .

*Id.* at 243. Thus, we have previously recognized that Congress limited § 503(b)(3)(D) to only Chapters 9 and 11. Other circuits and bankruptcy appellate panels—not to mention the vast majority of district and bankruptcy courts[2]—have held expressly that substantial contributions in a Chapter 7 proceeding are not administrative expenses under § 503(b). *See, e.g.*, *In re United Educ. & Software,* 2005 WL 6960237, at *5–7; *In re Morad*, 328 B.R. 264, 273 (B.A.P. 1st Cir. 2005); *In re Lloyd Sec., Inc.*, 75 F.3d 853, 856–58 (3d Cir. 1996); *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 945 (3d Cir. 1994) ("There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that post-conversion expenses were intended to be reimbursable under those provisions or not at all. *See, e.g.*, §§ 503(b)(3)(B) and (C).").

---

[2]At the time of this writing, 25 bankruptcy or district courts either denied recovery for substantial contributions in a Chapter 7 case or recognized that § 503(b)(3)(D) is limited to only Chapters 9 and 11. *In re Peterson*, 152 B.R. 612, 614 (D.S.D. 1993); *In re Beck Rumbaugh Assocs. Inc.*, 84 B.R. 369, 371 (E.D. Pa. 1988); *In re Kavlakian*, No. 06-11280-JNF, 2013 WL 2422688, at *11 n.2 (Bankr. D. Mass. June 3, 2013); *In re Watson*, 495 B.R. 88, 93–95 (Bankr. D. Col. 2013); *In re Keeley and Grabanski Land P'ship*, No. 10-31482, 2013 WL 4170414, at *11 (Bankr. D.N.D. Aug. 15, 2013); *In re Engler*, 500 B.R. 163, 174 (Bankr. M.D. Fla. 2013); *In re Schimmel*, No. 11-10272, 2012 WL 6538953, at *1 (Bankr. N.D. Cal. Dec. 12, 2012); *In re Lambert*, No. 04-30394-WRS, 2010 WL 3927067, at *1–2 (Bankr. M.D. Ala. Oct. 5, 2010); *In re Courtney*, 359 B.R. 883, 887 n.2 (Bankr. E.D. Tenn. 2007); *In re Hackney*, 351 B.R. 179, 200–05 (Bankr. N.D. Ala. 2006); *In re Harvey*, No. 04-35576PM, 2006 WL 4481990, at *2 (Bankr. D. Md. Nov. 22, 2006) (denying reimbursement despite recognizing that "fundamental fairness crie[d] out for" it because "§ 503(b)(3)(D) is limited to cases under Chapter 9 or 11"); *In re Hall*, 373 B.R. 788, 800 (Bankr. S.D. Ga. 2006); *In re Chavez*, No. 05-29937-B-7, 2006 WL 3832858, at *3 (Bankr. E.D. Cal. Dec. 27, 2006); *In re Dorado Marine, Inc.*, 332 B.R. 637, 640 (Bankr. M.D. Fla. 2005); *In re United Container LLC*, 305 B.R. 120, 128 (Bankr. M.D. Fla. 2003); *In re Blount*, 276 B.R. 753, 757 (Bankr. M.D. La. 2002); *In re Schachter*, 228 B.R. 359, 362 (Bankr. E.D. Pa. 1999) (acknowledging that § 503(b)(3)(D) is inapplicable to Chapter 7 proceedings); *In re Conty*, 205 B.R. 329, 332 (Bankr. M.D. Fla. 1996); *In re Alumni Hotel Corp.*, 203 B.R. 624, 631 (Bankr. E.D. Mich. 1996); *In re Francosky*, 185 B.R. 550, 551 (Bankr. N.D. Ohio 1995); *In re Indian Motorcycle Apparel and Accessories Co., Inc.*, 174 B.R. 659, 663 n.2 (Bankr. D. Mass. 1994); *In re Trinsey*, 115 B.R. 828, 836 (Bankr. E.D. Pa. 1990); *In re Kahler*, 84 B.R. 721, 723 (Bankr. D. Col. 1988); *In re Beck-Rumbaugh Assocs. Inc.*, 68 B.R. 882, 885–86 (Bankr. E.D. Pa. 1987), *aff'd*, 84 B.R. 369, 371 (E.D. Pa. 1988); *In re Romano*, 52 B.R. 590, 594 (Bankr. M.D. Fla. 1985). In contrast, only four bankruptcy courts permitted recovery of substantial contributions as an administrative expense in a Chapter 7 case. *In re Pappas*, 277 B.R. 171, 176 (Bankr. E.D.N.Y. 2002); *In re Lloyd Sec., Inc.*, 163 B.R. 242, 252–53 (Bankr. E.D. Pa. 1994), *rev'd*, 75 F.3d 853, 856–58 (3d Cir. 1996); *In re Zedda*, 169 B.R. 605, 607–08 (Bankr. E.D. La. 1994); *In re Rumpza*, 54 B.R. 107, 109 (Bankr. S.D. 1985).

The majority cites to Sixth Circuit precedent, and that of our sister circuits, to support its interpretation of § 503(b). None of those cases compel the conclusion the majority reaches, however. The majority cites to, for example, *In re Mark Anthony Construction, Inc.*, *In re Al Copeland Enterprises, Inc.*, 991 F.2d 233 (5th Cir. 1993), and *In re Flo-Lizer, Inc.*, as evidence that "there is broad consensus that the categories [§ 503(b)] sketches are not exhaustive."**3** Maj. Op. at 6. I agree with the limited holding of these cases that Congress's use of "including" in § 503(b) implies that §§ 503(b)(1)–(b)(9) do not constitute an exhaustive list of potential administrative expenses. These cases, however, do not require—or even suggest—that we recognize a substantial contribution claim in a Chapter 7 proceeding as an administrative expense *in light of* § 503(b)(3)(D). For example, in *In re Al Copeland Enterprises*, the Fifth Circuit determined that post-petition interest on sales taxes could be considered an administrative expense under § 503(b)(2). 991 F.2d 238–39. But, unlike the present appeal, § 503(b) is entirely silent regarding interest as an administrative expense, and does not contain a provision, analogous to § 503(b)(3)(D), that explicitly defines the circumstances under which interest can be considered an administrative expense. *Id.*

Similarly, both the Ninth Circuit and this court, in adopting the Ninth Circuit's analysis, have held that post-petition interest from unpaid federal employment taxes can be considered an administrative expense. In *Nicholas v. United States*, 384 U.S. 678 (1966), the Supreme Court held that interest could be treated as an administrative expense under a prior version of the Bankruptcy Act. *In re Mark Anthony Constr.*, 886 F.2d at 1104. The Ninth Circuit, in *In re Mark Anthony Construction*, identified an early Senate bill for the modern Bankruptcy Act that specifically included interest as an administrative expense under § 503(b), consistent with *Nicholas*, though the later House version of the bill and the eventual compromise bill were silent on the subject. *Id.* Given the use of the open-ended "including" language of § 503(b) and Congress's failure to expressly exclude interest from the reach of that language, the court held that § 503(b) and its legislative history supported the continued application of the common law rule of *Nicholas* that interest *could* be considered an administrative expense. *Id.* at 1106. The

---

**3**Counsel for Coface has stated that *In re Flo-lizer* is the strongest case supporting their argument that § 503(b) permits categorizing substantial assistance claims under Chapter 7 as an administrative expense. Oral Argument at 8:50, *Mediofactoring v. McDermott*, No. 13-2489 (6th Cir. 2014).

Ninth Circuit further noted that Congress explicitly included penalties for failure to pay taxes as an administrative expense in § 503(b)(1)(C), and concluded that there was no reason to treat interest and penalties differently. *Id.* at 1108. In *In re Flo-Lizer*, this court largely adopted the Ninth Circuit's approach, focusing on the "including" language in § 503(b), the legislative history of the Bankruptcy Act, and the treatment of penalties in § 503(b)(1)(C), to hold that interest could be considered an administrative expense under § 503(b) even if not expressly mentioned. *In re Flo-Lizer, Inc.*, 916 F.2d at 365–66.

These cases are distinguishable from the circumstances before us now: (1) Coface has not identified any pre-Bankruptcy Act practice of granting administrative expense status to creditor contributions in Chapter 7 proceedings; (2) nothing in the legislative history indicates that either house of Congress believed substantial contribution claims in Chapter 7 proceedings were appropriate; and (3) no provision of § 503(b) grants administrative expenses for costs similar to substantial contributions *in Chapter 7*. Thus, the case law upon which the majority relies does not actually support an interpretation of § 503(b) which would grant bankruptcy courts the authority to award expenses for substantial contributions by a creditor in Chapter 7 proceedings.

II.

We should be hesitant, as an Article III court, to make a policy determination about the appropriate scope of § 503(b) based solely on Congressional inaction. Congress explicitly stated that substantial contributions can be considered an administrative expense in Chapter 9 and 11 proceedings. Congress has said nothing about Chapter 7. Although the majority reads much into Congress's use of "including" in § 503(b), Congress's failure to include Chapter 7 in § 503(b)(3)(D) seems to be far more indicative of its intent, especially where Congress used the term "including" in § 503(b)(1)(A) and did not do so in § 503(b)(3). To the extent the majority relies on principles of equity, moreover, the equities actually cut both ways here. We must consider the equities for all creditors, not just creditors like Coface who seek the higher priority given to administrative expenses. While it is true that Coface's contributions have benefitted the bankruptcy estate, Coface is not the only creditor seeking recovery from the estate. Pursuant to the majority's decision to grant Coface administrative expense status for their contributions,

other creditors will be harmed, as administrative expenses receive one of the highest priority statuses under § 507. The majority also highlights policy considerations that favor an expansive reading of § 503(b), including promoting creditor participation in Chapter 7 proceedings and rewarding Coface for taking action to remove Shapiro when it had "no way of knowing . . . that it ultimately would be successful." Maj. Op. at 12. Though Coface's actions are commendable, Coface will be compensated, as a party holding approximately 50% of the amount of the unsecured claims, for its actions. And, as the Supreme Court has cautioned before with respect to the Bankruptcy Code, it is the duty of Congress, and not the courts, to address any difficulties or "improper incentives" that may arise from the application of the plain meaning of a Code provision. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644–45 (1992) (stating that it is for Congress to address any "improper incentives" that may come from the Supreme Court's interpretation of 11 U.S.C. § 522(l) as consistent with the language of the statute). Considerations of equity and fairness simply do not favor Coface as strongly as the petitioners and majority urge. As the only Congressional guidance we have on the interpretation of § 503(b) appears in the apparent restrictions written into § 503(b)(3)(D), we should limit claims for substantial contribution to the express language of § 503(b)(3)(D), and leave it to Congress to expand that authority to Chapter 7 proceedings if it so desires.

While I respect the majority's thoughtful analysis of this difficult issue, I ultimately must disagree with it. Because the claimed costs accrued during a Chapter 7 case, and because § 503(b)(3)(D) does not permit such costs to be considered an administrative expense under the appropriate limited construction of § 503(b), I believe that we should affirm the holdings of the bankruptcy court and district court, and deny Coface's application for administrative expenses under § 503(b).